BENJAMIN BRICKLIN ET AL. *v.* STENGOL
CORPORATION ET AL.

BENJAMIN BRICKLIN ET AL. *v.* GOLUB
ASSOCIATES ET AL.

NEW LONDON INN ASSOCIATES ET AL. *v.*
BENJAMIN BRICKLIN ET AL.

GOLUB ASSOCIATES ET AL. *v.*
BENJAMIN BRICKLIN ET AL.
(2256)

DANNEHY, C.P.J., TESTO and BORDEN, Js.

Argued January 3—decision released May 8, 1984

*Mary E. Holzworth,* with whom, on the brief, were *Milton L. Jacobson, Jackson T. King* and *David S. Williams,* for the appellants-appellees (defendants in the first and second cases, Leo Golub and Louis Saxe).

*Peter Kelly,* for the appellees-appellants (plaintiffs in the first and second cases).

BORDEN, J. This is a combined appeal[1] from the judgments of the trial court in four cases which involve requests for the dissolution of a corporation, for the winding up and dissolution of a limited partnership and for the discharge of two notices of lis pendens. The briefs of the parties being silent on the matter of the judgments in the third and fourth cases which discharged the notices of lis pendens, we find no error in those two cases. The plaintiffs in the first and second cases are Benjamin Bricklin and Rebecca Golub. The remaining parties are defendants in one or both of the first two cases. Stengol Corporation (Stengol) is a Connecticut corporation which operates two Holiday Inn motels in New London and Groton. The Groton motel is located on land leased from Golub Associates, a Connecticut limited partnership. Leo Golub, Louis P. Saxe, Herman Traub, William Martin and Audrey Golub, the wife of Leo Golub, are officers and directors of Stengol. Benjamin Bricklin and Rebecca Golub, the former wife of Leo Golub, are shareholders of Stengol. Golub Associates is comprised of Leo Golub, as sole general partner, and Audrey Golub, Louis P. Saxe and Benjamin Bricklin as limited partners.[2] Rebecca Golub purports to be a limited partner in Golub Associates by virtue

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] There are other limited partners in Golub Associates but they were not made parties to this action.

of a Florida divorce judgment. New London Inn Associates is comprised of Leo Golub and Louis P. Saxe as general partners.

## I

### BRICKLIN *v.* STENGOL CORPORATION (THE CORPORATION CASE)

This action was brought in three counts. In the first count the plaintiffs seek a judicial winding-up and dissolution of Stengol pursuant to General Statutes § 33-382. The second count is a derivative action on behalf of the shareholders against the individual officers and directors of Stengol for misuse of corporate funds and improper corporate activities. The third count is a derivative action for legal malpractice against Herman Traub, a director and general counsel of Stengol.

Under the first count, the defendants Leo Golub and Louis P. Saxe applied for an appraisal of the plaintiffs' shares in Stengol. The trial court, with the agreement of the parties, appointed the American Appraisal Company (AAC) to appraise the capital stock of Stengol as of July 17, 1977, the day prior to commencement of this action in accordance with General Statutes § 33-384. Richard Kelsey of AAC estimated the value of the stock of Stengol at $260,000. The plaintiffs objected to the appraisal and offered the testimony of two other appraisers who valued the stock at $892,000. The defendants also objected to the AAC appraisal and submitted the testimony of another appraiser who valued the stock at zero. The trial court accepted the AAC appraisal and valued the stock of Stengol at $260,000.

With respect to the derivative claims against the directors of Stengol, the court found that the defendants failed to prove the fairness of two transactions:[3]

---

[3] Pursuant to General Statutes § 33-323 and the cases, self-dealing transactions are voidable unless the self-dealing director sustains the burden of

the issuance of 240 shares of class A stock to Leo Golub in connection with a transaction known as the Rhulen-Kasow transaction; and the issuance of 185 shares of class B stock to Leo Golub and Louis P. Saxe in connection with a transaction known as the Tri-Par transaction. The court found, however, that Leo Golub had personally made a $24,000 payment to Rhulen and Kasow which resulted in his receiving the 240 shares of class A stock. Accordingly, the court voided the issuance of the 240 shares of class A stock and the 185 shares of class B stock and reinstated the debt of $24,000 due to Leo Golub.

Another derivative claim raised by the plaintiffs related to a loan and lease agreement between Stengol and Heads Inne, Inc., a corporation of which the wives of Leo Golub and Louis P. Saxe were the principal officers. In that transaction, Stengol loaned $10,000 to Heads Inne, Inc. to establish a beauty parlor business in the New London Holiday Inn and Stengol leased two rooms in the New London Holiday Inn to Heads Inne, Inc. on terms that required payment of rent only after the motel exceeded a ninety-six percent occupancy rate. The court found the transaction unfair to Stengol and rendered a judgment against Leo Golub and Louis P. Saxe in the amount of $14,000 for loss of use of the funds and loss of reasonable rent.

The court found also that Leo Golub and Louis P. Saxe, as officers and directors, permitted the expenditure of $55,000 of corporate funds for no valid corporate purpose in breach of their fiduciary duties and accordingly rendered judgment against them for that amount.

In the remaining derivative claims, the plaintiffs alleged that Leo Golub and Louis P. Saxe usurped a

---

showing that the self-dealing was fair, in good faith and for adequate consideration. *Hadden* v. *Krevit,* 186 Conn. 587, 590, 442 A.2d 944 (1982).

corporate opportunity; that compensation of Herman Traub for legal services and the salary of Audrey Golub were excessive; that Leo Golub, Louis P. Saxe and Herman Traub caused Stengol to pay $38,000 for debts unrelated to any proper corporate purpose; that the sale of television sets to Stengol by Leo Golub and Louis P. Saxe was at an excessive price; that the transfer of Stengol's limited partnership interest in Golub Associates in partial payment for waived rent was detrimental to the interest of Stengol; and that Herman Traub was guilty of legal malpractice. Those claims were found in favor of the individual defendants.

In summary, the court found the value of the stock of Stengol on July 17, 1977, to be $260,000. With respect to the derivative claims the court rendered judgment against the individual defendants for $14,000 and for $55,000, for a total of $69,000. In addition, the court voided the issuance of 425 shares of stock to Leo Golub and Louis P. Saxe, but reinstated the debt of $24,000 due Leo Golub from Stengol in connection with the payment to Rhulen and Kasow. Subtracting the sum of $24,000 from $69,000, the court found a net amount of $45,000 due to Stengol from the individual defendants. This amount was added to the value of $260,000 for the stock of Stengol, for a total value of $305,000.

The court then determined that Rebecca Golub was the owner of 225 shares of class A stock and 185 shares of class B stock and that Benjamin Bricklin was the owner of 90 shares of class A stock and 185 shares of class B stock. The court concluded that the combined total of both plaintiffs' legal and equitable holdings, totaling 685 shares, was equal to 45.6 percent of a total of 1500 shares outstanding, and that that percentage represented $139,080 of the total value of Stengol.

## II

### BRICKLIN *v.* GOLUB ASSOCIATES
### (THE PARTNERSHIP CASE)

This action was brought by the plaintiffs, Benjamin Bricklin, a limited partner, and Rebecca Golub, a purported limited partner, in Golub Associates, against the limited partnership itself, Leo Golub, the general partner, and limited partners Louis P. Saxe and Audrey Golub. The plaintiffs sought a determination of their partnership interests, an accounting for all sums due and owing to them from the partnership, and a winding-up and dissolution of the partnership.

Rebecca Golub claimed to be a limited partner in Golub Associates by virtue of a judgment rendered in Florida on June 2, 1975, in her divorce from Leo Golub. That judgment stated that she was the owner of a "$25,000 interest in Golub Associates . . . [the] same being a 7.3% interest in said limited partnership." The court held that the award of the Florida court was not entitled to full faith and credit because of its conclusion that to do so would be contrary to both Connecticut's and Florida's versions of the Uniform Limited Partnership Act (ULPA) requiring consent of all the other partners before admitting a new partner. The court accordingly ordered Leo Golub to pay to Rebecca Golub the monetary equivalent of the $25,000 partnership interest together with statutory interest from June 2, 1975, to the date of judgment, for a total of $31,275. The court concluded that there was no basis for a judicial winding-up and dissolution of the partnership.

## III

The defendants Leo Golub and Louis P. Saxe appealed from the judgment in the corporation case on two grounds. They first claim that the court erred in

calculating the corporation's value in that it added the $55,000 derivative judgment to the AAC appraisal value, when the debt underlying that judgment was already included in that appraisal. They also claim that the court erred in its determination of the total number of outstanding shares and therefore in its computation of the value of the plaintiffs' shares.

The plaintiffs, Benjamin Bricklin and Rebecca Golub, filed a combined cross appeal in both cases, raising a number of issues. In the corporation case they argue that the trial court should not have accepted the AAC appraisal because it contained a number of flaws. They also maintain that the court erred in rendering judgment against them on several of the derivative claims. In the partnership case, Rebecca Golub in her appeal[4] argues that the Florida divorce judgment should have been given effect and, in the alternative, that the court erred in its determination of the amount due her.

## IV

### THE CORPORATION APPEAL AND CROSS APPEAL

#### A

##### THE APPEAL

The defendants maintain that the court erroneously included the sum of $55,000 twice in its calculation of the value of the stock of Stengol because this amount was already included in the AAC appraisal. At the trial they argued that the $55,000 had been repaid. The court found that the evidence offered to prove repayment of the sum, i.e., an altered deposit slip and an inconclu-

---

[4] The plaintiffs' claims in the partnership case are presented by way of the combined cross appeal. Since the defendants did not appeal in that case, however, and since Rebecca Golub is the plaintiff principally affected by the issues raised in this court in that case, we consider the partnership case here as an appeal by her rather than as a cross appeal by her and Benjamin Bricklin.

sive ledger sheet, was insufficient to prove repayment. This issue was also raised by the defendants in a motion to reargue and for remittitur. In ruling on the motion the court concluded that the amount from the derivative claims became additional assets of Stengol which was properly added to the AAC appraisal. The trial court's determinations that the $55,000 had not been repaid and that it was properly added to the AAC appraisal figure find support in the record and are not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The defendants' next claim, that the trial court erred in computing the number of shares outstanding and, thus, in computing the value of the plaintiffs' interest, has merit. The plaintiffs alleged in the complaint that there were 1000 shares of class A and 1000 shares of class B stock issued and outstanding. This allegation was binding on them; see *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983); and was supported by a 1977 report of the corporation's certified public accountants. The court invalidated the issuance of 240 shares of class A stock to Leo Golub and 185 shares of class B stock to Louis P. Saxe, thus reducing the total number of shares outstanding by 425. The number of shares remaining was therefore 1575. The court, however, erroneously found that there were 1500[5] shares remaining, making the plaintiffs' combined total of 685 shares equal to 45.6 percent of the total shares outstanding. The proper calculation is that the plaintiffs' 685 shares represent 43.49 percent of the shares outstanding. Thus, the value of their ownership is $132,645.

---

[5] There is no support in the record for this figure. The exhibit on which the plaintiffs relied at oral argument is of no help to them.

## B

The plaintiffs first argue that the trial court erred in accepting the AAC valuation as a basis for determining the value of the stock of Stengol. They maintain that the AAC report should not have been relied upon as a fair determination of Stengol's value because it failed to value Stengol's leases, because it used an incorrect discount rate, because it failed to value nonoperating assets and because it failed to provide for outside financing of capital improvements. The trial court found that the AAC valuation was the only independent and unbiased opinion since AAC was appointed by the court at the concurrent recommendation of the parties, and it found that, although Kelsey of AAC admitted having limited previous experience in motel valuation, his appraisal of Stengol was objective and reasonable.

" 'The acceptance or rejection of the opinions of expert witnesses is a matter peculiarly within the province of the trier of fact and its determinations will be accorded great deference by this court.' " *Johnson* v. *Healy,* 183 Conn. 514, 515–16, 440 A.2d 765 (1981). Since the trial court was free to accept or reject, in whole or in part, the testimony offered by the various experts, we will not disturb its decision. *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981).

The plaintiffs also argue that the court erred in refusing to consider a mortgage commitment letter from Textron, Inc., to Stengol for $3 million. The plaintiffs offered the letter at a post-trial hearing on October 22, 1979. The court refused to consider the letter because it was being offered after both parties had rested their cases. Since this letter was offered more than two years

after the appraisal date of July 17, 1977, the trial court was clearly within its discretion in refusing to consider it.

The plaintiffs next claim that the trial court should have found that the acquisition of a fifty percent interest in New London Inn Associates by Leo Golub and Louis P. Saxe constituted usurpation of a corporate opportunity. The court's conclusion that Stengol was financially unable to undertake the transaction; see *Katz Corporation* v. *T. H. Canty & Co.,* 168 Conn. 201, 362 A.2d 975 (1975); and that, therefore, Leo Golub and Louis P. Saxe did not usurp a corporate opportunity, is supported by the evidence in the record and will not be disturbed on appeal. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. The plaintiffs' remaining claims of error likewise involve various factual determinations by the trial court which are not clearly erroneous.

In the case of *Bricklin* v. *Stengol Corporation,* there is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except that the value of the plaintiffs' shares in the defendant corporation is $132,645; there is no error on the plaintiffs' cross appeal.

## V

### THE PARTNERSHIP APPEAL

Rebecca Golub contends that the trial court erred in failing to accord full faith and credit to a Florida divorce judgment which she claims had made her a limited partner in Golub Associates. In addition, she argues that the trial court erred in determining the value of her interest in the partnership.

In 1975, the marriage of Leo Golub and Rebecca Golub was dissolved in Florida. Incident to the dissolution, the Florida court awarded Rebecca Golub a

"$25,000 interest in Golub Associates . . . [the] same being a 7.3% interest in said limited partnership." At the time of this award, Leo Golub was the sole general partner in Golub Associates and owned an 18.68 percent interest in the partnership. The trial court found that the judgment of the Florida court was contrary to the ULPA of both Connecticut; see General Statutes §§ 34-9 through 34-38; and Florida; see Fla. Stat. §§ 620.01 through 620.32; because it purported to make Rebecca Golub a limited partner in Golub Associates without the consent of all the other partners. The court therefore refused to give full faith and credit to the Florida judgment. The court, however, ordered Leo Golub to pay to Rebecca Golub the monetary equivalent of the $25,000 partnership interest together with statutory interest of six percent from June 2, 1975, to the date of the judgment.

The trial court's construction of the Florida judgment and its relationship to the ULPA was in error. The court construed the judgment as making Rebecca Golub a limited partner in Golub Associates. While it is true that a new partner cannot be admitted to a partnership without the consent of the other partners unless the partnership agreement provides otherwise; *Ritzau* v. *Warm Springs West,* 589 F.2d 1370, 1375 (9th Cir. 1979); 60 Am. Jur. 2d, Partnership § 106; a partner may assign his right to the distribution of profits from the partnership without the consent of the other partners. General Statutes § 34-27 (ULPA);[6] General Statutes §§ 34-64 and 34-65 (Uniform Partnership Act); *Burnet*

---

[6] General Statutes § 34-27 provides as follows: "Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part. An assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to receive, to the extent assigned, only the distribution to which the assignor would be entitled. Except as provided in the partnership agreement, a partner ceases to be a partner upon assignment of all his partnership interest."

v. *Leininger,* 285 U.S. 136, 139–40, 52 S. Ct. 345, 76 L. Ed. 665 (1932); *Hughes* v. *Fairfield Lumber and Supply Co.,* 19 Conn. Sup. 138, 141, 110 A.2d 499 (1954).

Where a judgment of a sister state is ambiguous it should be construed so as to be entitled to full faith and credit. See *Smith* v. *Smith,* 174 Conn. 434, 437–38, 389 A.2d 756 (1978). Thus, the Florida judgment must be read as awarding Rebecca Golub only a $25,000 or 7.3 percent interest in the distributions from the partnership. This reading is consistent with both Leo Golub's stipulation in the course of the trial that Rebecca Golub had an "equitable interest" to that extent in the partnership and with Florida's version of the ULPA. See Fla. Stat. § 620.19.

Rebecca Golub argues nonetheless that the Florida judgment made her a limited partner because paragraphs 10 and 18 of the partnership agreement permit her to become a limited partner without consent of the other partners. A review of the partnership agreement does not support this contention. Paragraph 10 deals exclusively with the death, retirement or incapacity of a general partner. Paragraph 18 is similarly inapplicable because it deals solely with the assignment of a limited partner's interest. Leo Golub was a general partner.

Rebecca Golub also argues that the trial court erred in determining the value of her interest in Golub Associates. We agree. Since the Florida judgment awarded Rebecca Golub a $25,000 interest in Golub Associates, the same being a 7.3 percent of the partnership, the court should have determined the present monetary value of her 7.3 percent interest and awarded her that amount. See *Riegler* v. *Riegler,* 243 Ark. 113, 117, 419 S.W.2d 311 (1967); *Myrick* v. *Second National Bank of Clearwater,* 335 So. 2d 343 (Fla. Dist. Ct. App. 1976).

During the period from 1972 to 1976, the plaintiff Benjamin Bricklin and the defendants Leo Golub and Louis P. Saxe agreed to waive their share of rental payments from Stengol to Golub Associates in order to assist Stengol with its cash flow problems. In 1975, Leo Golub and Louis P. Saxe took title to Stengol's 10.17 percent interest in Golub Associates as partial compensation for the waived rent. The trial court awarded the plaintiff Benjamin Bricklin his pro rata share of that waived rent. The court did not, however, make a determination of Rebecca Golub's share. Thus, the court must also determine whether and to what extent Rebecca Golub is entitled to a share of that waived rent.

In the case of *Bricklin* v. *Golub Associates,* there is error, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.