# JAMES P. OSTROWSKI ET AL. *v.* CRAIG AVERY ET AL.
## (SC 15655)

Callahan, C. J., and Borden, Katz, Palmer and Peters, Js.

Argued September 25—officially released December 9, 1997

*Robert A. Harris,* for the appellants-appellees (plaintiffs).

*Dion W. Moore,* with whom was *Robert Berta,* for the appellees-appellants (named defendant et al.).

*Opinion*

PETERS, J. This case raises important issues concerning the procedural and substantive rules governing claims of fiduciary misconduct in general and usurpation of a corporate opportunity in particular. The plaintiffs, minority shareholders of Avery Abrasives, Inc. (Avery Abrasives), a manufacturer of abrasive cutting wheels, brought this action in their individual capacities and derivatively on behalf of that corporation pursuant to General Statutes § 52-572j.[1] On the motion of its special litigation committee,[2] Avery Abrasives became a

---

[1] General Statutes § 52-572j provides in relevant part: "(a) Whenever any corporation or any unincorporated association fails to enforce a right which may properly be asserted by it, a derivative action may be brought by one or more shareholders or members to enforce the right . . . ."

[2] Through its special litigation committee, Avery Abrasives moved to dismiss the action, claiming that the action would cause it unnecessary expense.

defendant[3] in accordance with General Statutes § 52-107.[4] The plaintiffs claimed that, by establishing International Small Wheels (ISW), a corporation engaged in the manufacture of small abrasive cutting wheels, the defendants Craig Avery and Michael Passaro had violated their fiduciary duties to Avery Abrasives. Specifically, the plaintiffs alleged that the defendants had diverted customer orders to ISW, had used Avery Abrasives equipment and personnel for ISW business, had conducted ISW business from the Avery Abrasives premises during business hours, had hired Avery Abrasives employees to work for ISW and had usurped a corporate opportunity. The plaintiffs further claimed that: (1) the defendants' conduct violated General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA); (2) the defendants were unjustly enriched by the salaries and benefits that they received from Avery Abrasives during the time they operated ISW; (3) Avery wrongfully had disregarded his fiduciary duty to Avery Abrasives by allowing an Avery Abrasives employee, Mary Sobek, to engage in a competing business enterprise, Monroe Abrasives, Inc., and to conduct business for Monroe Abrasives, Inc., while at work at Avery Abrasives; (4) Avery's conduct constituted negligence in breach of the duty he owed to Avery Abrasives and its shareholders; and (5) Avery's conveyance to his wife, Antoinette Avery, of their jointly owned

The trial court denied the motion, concluding that the special litigation committee's recommendation had been biased.

[3] Although Avery Abrasives successfully intervened to become a defendant for the purpose of filing a motion to dismiss the plaintiffs' cause of action, it is only a nominal defendant on this appeal. The defendant Antoinette Avery is a defendant only for the purposes of the claim of fraudulent conveyance. We, therefore, will refer to Craig Avery and Michael Passaro, jointly, as the defendants for the purposes of this appeal. Individually, they will be referred to by their last names.

[4] General Statutes § 52-107 provides in relevant part: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination

home violated General Statutes § 52-552, the Uniform Fraudulent Transfer Act.

After a court trial, *Moran, J.*, concluded that the defendants, although they were corporate fiduciaries, were not liable to the plaintiffs. The court found that the plaintiffs had failed to establish the truth of their allegations, and, accordingly, that: (1) any misconduct by the defendants in working on ISW business while at Avery Abrasives had not adversely affected their job performance or caused more than de minimis harm to Avery Abrasives; (2) the defendants had not misappropriated any property from Avery Abrasives; and (3) Avery had not knowingly allowed Sobek to conduct business for Monroe Abrasives, Inc., while she was working at Avery Abrasives, or, alternatively, even if Avery had allowed Sobek to do such work, the damage to Avery Abrasives had been minimal. The court also determined that the defendants had not violated CUTPA. Implicitly rejecting the plaintiffs' negligence claim, the trial court concluded that because Avery was not liable to the plaintiffs, it would not consider whether the transfer of his interest in his home to his wife was fraudulent. Finally, the court determined that the plaintiffs had met their burden of proof that the defendants had usurped a corporate opportunity by forming ISW. The court, nonetheless, declined to impose liability for such usurpation, principally because, prior to the formation of ISW, the defendants had obtained the consent of Raymond Avery, who is Craig Avery's father, as well as the president, chief executive officer and majority shareholder of Avery Abrasives.

The plaintiffs appealed from the judgment of the trial court claiming that the trial court improperly had: (1) failed to require Avery to prove the fairness of his conduct by clear and convincing evidence; (2) concluded

cannot be had without the presence of other parties, the court may direct that such other parties be brought in. . . ."

that permission from Raymond Avery absolved the defendants from liability for usurpation of a corporate opportunity belonging to Avery Abrasives; (3) refused to apply disclosure requirements to the defendants in the absence of controlling appellate precedents; and (4) concluded that the defendants' appropriation of a corporate opportunity did not constitute an unfair and deceptive trade practice.[5] The defendants cross appealed, claiming that the trial court improperly had determined that the manufacture of small wheels was a corporate opportunity for Avery Abrasives. The appeal and cross appeal were transferred from the Appellate Court to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court and remand the case for a new trial.

The following facts are relevant to this appeal. Avery Abrasives is a Connecticut corporation that manufactures abrasive cutting wheels. Raymond Avery, the president and chief executive officer of Avery Abrasives, owns more than 54 percent of the outstanding Avery Abrasives stock. During the period of time in question, the remainder of Avery Abrasives stock was held by eight minority shareholders, including the plaintiffs, and an employee stock ownership plan. Avery is the vice president of manufacturing for Avery Abrasives, and was elected a director of Avery Abrasives in 1976. Passaro is the finishing supervisor at Avery Abrasives.

Avery Abrasives manufactures cutting wheels in diameters of five inches and larger. Prior to 1970, Avery

[5] The plaintiffs claimed that the judgment of the trial court should be reversed and the case remanded with direction that judgment be rendered for the plaintiffs with respect to the claims of breach of fiduciary duty, violation of CUTPA and unjust enrichment. The plaintiffs also claimed that further proceedings should be held regarding the proper remedy, including a remedy for the alleged fraudulent conveyance.

Abrasives had manufactured smaller wheels in diameters of less than five inches but, in 1970, Raymond Avery had decided to focus on the manufacture and sale of larger wheels, particularly wheels of twenty inches or more in diameter.

In 1976, the defendants became persuaded that there was a market for small cutting wheels of less than four inches in diameter. Avery asked his father whether he and Passaro could retain their positions at Avery Abrasives while running their own corporation to manufacture small cutting wheels. After obtaining Raymond Avery's consent to the plan, the defendants incorporated ISW by certificate filed January 27, 1977. At an Avery Abrasives board of directors meeting held the following day, January 28, 1977, Raymond Avery proposed to the directors that Avery Abrasives expand to manufacture small wheels. Neither of the defendants disclosed to the minority shareholders of Avery Abrasives that ISW already had been formed to pursue this very opportunity.

The defendants operated ISW from 1976 until late 1989 or early 1990. ISW manufactured wheels of less than four inches in diameter, which it produced from large wheels purchased at a discount from Avery Abrasives. ISW sold some of its finished wheels to Avery Abrasives, hired several Avery Abrasives employees and shared some customers with Avery Abrasives. ISW ran an advertisement in the Yellow Pages listing Avery Abrasives' telephone number as its own. Occasionally, the defendants conducted ISW business while at Avery Abrasives. Between 1976 and 1988, ISW generated total gross revenues of $328,562, producing an annual average gross revenue of $25,274.

This case presents an unusual factual situation in which the majority shareholder of the corporation is the father of the corporate fiduciary who has been charged

with usurpation of a corporate opportunity. The issues presented have significance, however, for all corporations, particularly closely held corporations.

## I

The starting point of our analysis is the proper allocation of the burden of proof in claims of violation of a corporate fiduciary's duty to his or her corporation.[6] We begin by setting out the basic framework for analyzing claims of violation of fiduciary duty. We then turn to the requirements specific to a claim of usurpation of corporate opportunity.

The plaintiffs claim that the defendants violated their fiduciary duty to Avery Abrasives in a number of ways. In essence, the plaintiffs allege that the defendants misused Avery Abrasives' resources, interfered with its business relationships, engaged in self-dealing transactions with Avery Abrasives, and, finally, usurped a business opportunity belonging to Avery Abrasives.

The trial court found that the plaintiffs had met their burden of proof with respect to establishing the role of the defendants as corporate fiduciaries. It concluded, nonetheless, that the plaintiffs also were required to assume the burden of proving that the defendants had violated their fiduciary obligations to Avery Abrasives. This latter conclusion was improper.

It is well established in our corporate fiduciary law that once a plaintiff establishes the existence of a fiduciary duty, the burden shifts to the corporate fiduciary to prove fair dealing by clear and convincing evidence. See *Konover Development Corp.* v. *Zeller*, 228 Conn.

---

[6] In order to provide context for our discussion of the issues relating to usurpation of a corporate opportunity, we first outline the doctrine governing claims of violation of a corporate fiduciary duty. Accordingly, we address the issues on appeal in a different order from that in which they were briefed by the plaintiffs.

206, 229–30, 635 A.2d 798 (1994); *Oakhill Associates* v. *D'Amato*, 228 Conn. 723, 726–27, 638 A.2d 31 (1994).

In our cases concerning self-dealing transactions, we have stated that, if a director of a corporation enters into a transaction with the corporation that will inure to his or her individual benefit, the director bears the burden of proving that the transaction is "fair, in good faith and for adequate consideration . . . ." *Rosenfield* v. *Metals Selling Corp.*, 229 Conn. 771, 795–96, 643 A.2d 1253 (1994); *Osborne* v. *Locke Steel Chain Co.*, 153 Conn. 527, 534–35, 218 A.2d 526 (1966); see also *Klopot* v. *Northrup*, 131 Conn. 14, 20–21, 37 A.2d 700 (1944); *Massoth* v. *Central Bus Corp.*, 104 Conn. 683, 688–89, 134 A. 236 (1926).

The framework governing a claim of usurpation of a corporate opportunity differs only in part from the basic corporate fiduciary framework. To prevail on this kind of claim, we observed, in *Katz Corp.* v. *T. H. Canty & Co.*, 168 Conn. 201, 207–208, 362 A.2d 975 (1975), that a plaintiff bears the burden of establishing: (1) a fiduciary relationship between the corporation and the alleged wrongdoers; and (2) the existence of a corporate opportunity. Once a plaintiff establishes these predicates to liability, the burden then shifts to the fiduciaries to establish, by clear and convincing evidence, the fairness of their dealings with the corporation. In this case, the trial court failed to heed the instructions of *Katz Corp.* After having determined that the plaintiffs had met their threshold burdens of proof, the court improperly failed to shift to the defendants the burden of justifying, by clear and convincing evidence, the manner in which they had discharged their fiduciary obligations. The court's findings of no liability on the part of the defendants cannot stand because they resulted from the court's mistaken determination that the plaintiffs bore the burden of establishing the extent of Avery Abrasives' loss.

## II

Whether the trial court's misallocation of the burden of proof requires a new trial depends on whether the trial court properly found that the plaintiffs had met their threshold burdens of proof. If they did not, the trial court's judgment in favor of the defendants would have to be sustained on that ground.

### A

The defendants have not challenged the validity of the trial court's finding that the plaintiffs had established the defendants' fiduciary relationship to Avery Abrasives. Indeed, in light of Avery's status as both an officer and a director of Avery Abrasives, he necessarily stands in a fiduciary relationship to Avery Abrasives and, derivatively, to its minority shareholders.[7] "An officer and director occupies a fiduciary relationship to the corporation and its stockholders." *Katz Corp.* v. *T. H. Canty & Co.*, supra, 168 Conn. 207. Accordingly, the judgment of the trial court must be reversed and the case must be remanded for further proceedings to determine whether the defendants can satisfy their burden of proof with respect to the claims of breach of their fiduciary duty. It is the defendants who must prove, by clear and convincing evidence, their fair dealing with respect to the plaintiffs' claims for: (1) the diversion of Avery Abrasives customer orders to ISW; (2) the use of Avery Abrasives equipment and personnel for ISW business; (3) the conduct of their ISW business from

---

[7] The plaintiffs argue that Passaro, as an agent of Avery Abrasives, was a corporate fiduciary with respect to matters within the scope of his employment. See *Town & Country House & Homes Service, Inc.* v. *Evans*, 150 Conn. 314, 316–17, 189 A.2d 390 (1963). The record indicates that the trial court made no distinction between Passaro and Avery with respect to their fiduciary status; the court seems to have assumed that both were corporate officers and thus corporate fiduciaries. On appeal, no challenge has been raised to the trial court's implicit finding that Passaro was a fiduciary of Avery Abrasives.

the Avery Abrasives premises; and (4) the hiring of Avery Abrasives employees to work for ISW.

## B

The scope of the trial on remand depends, however, not only on the proper resolution of these fiduciary claims but also on the propriety of the trial court's resolution of the plaintiffs' claim that the defendants had usurped a corporate opportunity. The defendants, in their cross appeal, argue that the trial court improperly determined that the plaintiffs had established the other factual predicate that they were required to prove, namely, that Avery Abrasives had a corporate opportunity to manufacture and sell small abrasive wheels. In light of the absence of specific appellate guidance on this aspect of our corporate law, we now turn to a description of the constituent elements of the law of usurpation of a corporate opportunity.

The parties on appeal do not contest that the trial court properly assigned to the plaintiffs the initial burden of establishing the fact of the existence of a corporate opportunity. The defendants, however, challenge the propriety of the legal analysis undertaken by the court in finding that the plaintiffs had met their burden. We conclude that the court properly found that, in forming ISW, the defendants had pursued a business venture that constituted a corporate opportunity belonging to Avery Abrasives.

Our decision in *Katz Corp.* delineated the contours of a cause of action for usurpation of a corporate opportunity.[8] We applied, in that case, an "avowed business

[8] The court in *Katz Corp.* did not fill in the interstices because, in that case, the dispositive issue was whether the law of usurpation of corporate opportunity encompassed claims of insider trading. Having decided that it did not, we had no occasion to explore further the constituent elements of a transaction that does constitute usurpation of a corporate opportunity. *Katz Corp.* v. *T. H. Canty & Co.*, supra, 168 Conn. 208–12.

purpose" test of corporate opportunity and recognized a defense of corporate financial inability. *Katz Corp. v. T. H. Canty & Co.*, supra, 168 Conn. 209. We concluded that the purchase of the plaintiff corporation's own outstanding stock did not constitute a corporate opportunity because: (1) the avowed business purpose of the corporation was not the purchase of its own securities; and (2) the corporation had no interest or expectancy in the purchase of its securities. Id., 209–10; see also S. Cross, Connecticut Corporation Law and Practice (1989) § 5.8 (B), pp. 278–79.

We began our analysis in *Katz Corp.* by citing the seminal corporate opportunity case of *Guth v. Loft, Inc.*, 23 Del. Ch. 255, 5 A.2d 503 (1939). *Katz Corp. v. T. H. Canty & Co.*, supra, 168 Conn. 208–209. According to *Guth*, whether a corporate opportunity exists is a "factual question to be decided by reasonable inferences from objective facts." *Guth v. Loft, Inc.*, supra, 277. In *Guth*, the Delaware Supreme Court explained: "[I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself." Id., 272–73.

In utilizing dual tests of corporate opportunity, the "avowed business purpose" test as well as the "interest or reasonable expectancy" test, *Katz Corp.* implicitly followed the accepted law in other jurisdictions. *Katz Corp. v. T. H. Canty & Co.*, supra, 168 Conn. 209. We take this occasion to elaborate further on the content of these tests.

The avowed business purpose test that we invoked in *Katz Corp.* is a variant of the "line of business" test, one of the leading tests of corporate opportunity. This test asks whether the opportunity is "closely associated with the existing and prospective activities of the corporation . . . ." *Rosenblum* v. *Judson Engineering Corp.*, 99 N.H. 267, 273, 109 A.2d 558 (1954). The Minnesota Supreme Court has developed a multifactor analysis for assessing what activities fall within a corporation's line of business. Among the useful factors listed by the court in *Miller* v. *Miller*, 301 Minn. 207, 224–25, 222 N.W.2d 71 (1974), are: (1) whether the business opportunity was one in which the complaining corporation had an interest or an expectancy growing out of an existing contractual right; (2) whether there was a close relationship between the opportunity and the corporation's business purposes and current activities; and (3) whether the business areas contemplated by the opportunity were readily adaptable to the corporation's existing business, in light of its fundamental knowledge, practical experience, facilities, equipment, and personnel.[9] The importance of a proper definition of the avowed business purpose test is underscored by the observation of legal scholars that the economic rationale for this test is that, for a small firm in particular, it may well be more efficient to expand its operations than to enter new fields. V. Brudney & C. Clark, "A New Look at Corporate Opportunities," 94 Harv. L. Rev. 998, 1012–13 (1981).

In *Katz Corp.*, we also considered and applied an "interest or expectancy" test to determine the existence

---

[9] We disagree, however, with the Minnesota court's analysis insofar as it requires the complaining corporation, in order to demonstrate the existence of a corporate opportunity, to prove its financial ability to undertake an opportunity. *Miller* v. *Miller*, supra, 301 Minn. 225. That view is inconsistent with our decision, in part I of this opinion, that it is the corporate fiduciary, not the complainant, who must establish, as an affirmative defense, that the corporation lacked the financial ability to avail itself of a corporate opportunity.

of a corporate opportunity. This test is basically "an extension of the concept of corporate property." V. Brudney & C. Clark, supra, 94 Harv. L. Rev. 1013. Requiring less tangible evidence than ownership or a right to exclude third parties,[10] proof of a corporation's "interest or expectancy" nonetheless requires a showing of more than a mere hope or desire on the part of the corporation. Id., 1014; see D. Brown, note, "When Opportunity Knocks: An Analysis of the Brudney & Clark and ALI Principles of Corporate Governance Proposals for Deciding Corporate Opportunity Claims," 28 Corp. Prac. Commentator 507, 514 (1987).

Our decision in *Katz Corp.* is ambiguous about the relationship between the avowed business purpose test and the interest or expectancy test. The analysis in that case is consistent, however, with the view that proof that the corporation had an interest or expectancy in the contested venture is a probative, but not a dispositive, factor in determining the existence of a corporation's avowed business purpose. *Katz Corp.* v. *T. H. Canty & Co.*, supra, 168 Conn. 209. We adopt that view today and conclude, explicitly, that the dominant inquiry is whether the corporate opportunity at issue falls within the corporation's avowed business purpose.

The plaintiffs in this case have met their burden of proving the existence of a corporate opportunity within the meaning of the *Katz Corp.* avowed business purpose test. The trial court found that the plaintiffs had proven that the manufacture of small cutting wheels was within Avery Abrasives' line of business, and that the Avery Abrasives board had contemplated entering the small wheels market at a board of directors meeting only

---

[10] A New York trial court has concluded, for example, that an interest or expectancy may exist if a director were pursuing an opportunity in the field on behalf of the corporation, or if the corporation needed the business opportunity, or if the opportunity was developed at the corporation's expense. *Litwin* v. *Allen*, 25 N.Y.S.2d 667, 685–86 (Supreme Court 1940).

days after ISW was incorporated in 1977. The fact that this discussion took place may be relevant, in some circumstances, to the adequacy of the defendants' disclosure to the board. See part III A of this opinion. It does not, however, require a finding that the manufacture of small wheels is not a corporate opportunity that belongs to Avery Abrasives. We are persuaded that the trial court's findings are supported by sufficient evidence in the record. We, therefore, reject the defendants' cross appeal.

As a consequence, the trial court's misallocation of the burden of proof to the plaintiffs requires a remand for a new trial, limited to the issue of the defenses that the defendants will have to prove in order to avoid liability to the plaintiffs. The plaintiffs will not be required to prove again that they have met their dual threshold burdens of proof, with respect to the existence of both a fiduciary relationship and a corporate opportunity. For the remaining issues relating to defenses, the trial court is entitled to guidance concerning the scope of the defenses to be adjudicated on remand.

### III

The claims that remain to be decided are those that the defendants, as corporate fiduciaries, bear the burden of proving by clear and convincing evidence. We now turn to the framework that, on remand, the trial court should apply in analyzing these remaining claims. The underlying issue is what the defendants need to prove to establish their good faith.

The most significant legal issue relating to the defendants' burden of proving fair dealing, a question of first impression for this court, pertains to the claim of usurpation of a corporate opportunity. In particular, what role does disclosure to other directors and shareholders play in determining whether a corporate opportunity

was in fact usurped? That question contains three sub-inquiries: (1) to whom should a corporate fiduciary make disclosure and what information must be communicated;[11] (2) in the absence of an appropriate disclosure, can a corporate fiduciary interpose other defenses in order to avoid liability; and (3) if other defenses are available to the corporate fiduciary, in the absence of an appropriate disclosure, what does a corporate fiduciary have to prove in order to establish a good faith defense to a claim of usurpation of a corporate opportunity? In our view, these inquiries should be resolved in a manner that not only provides protection for the corporation but also gives appropriate weight to the specific circumstances in which the corporate fiduciary and the corporation find themselves.

A

We turn first to the question of identification of the person or persons to whom corporate fiduciaries should disclose their intention to undertake an enterprise that might be a corporate opportunity. The trial court refused to impose liability on the defendants because, although they did not disclose their plan to form ISW to the Avery Abrasives board of directors or its minority shareholders, they sought the consent of Raymond Avery, Craig Avery's father as well as chief executive officer and majority shareholder of Avery Abrasives. We disagree with the trial court.

In our analogous case law on self-dealing transactions, we have held that a director may avail himself or herself of the defense of full disclosure only upon proving "approval of the contract or transaction by shareholders or disinterested directors . . . ." *Rosenfield* v. *Metals Selling Corp.*, supra, 229 Conn. 797; see

---

[11] Because the parties have not briefed the issue of what information a fiduciary must communicate to the appropriate corporate representatives to constitute full disclosure, we do not address this issue.

also *Massoth* v. *Central Bus Corp.*, supra, 104 Conn. 689; *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 141–43, 23 A. 708 (1891). The self-dealing statute in effect during the relevant time period, General Statutes (Rev. to 1995) § 33-323,[12] similarly authorizes corporate approval of such transactions by disinterested directors or by the majority of all of the shareholders of a corporation. If the self-dealing transaction could not be authorized by the board of directors except with the vote of the fiduciary or other interested directors, the agreement "may be ratified by [the corporation's] stockholders after its execution, at least where all consent . . . ." *Massoth* v. *Central Bus Corp.*, supra, 689.

The relevant scholarly commentary on the law of corporate opportunity contemplates disclosure to disinterested directors. "If the opportunity is rejected by the

---

[12] General Statutes (Rev. to 1995) § 33-323, which was repealed effective January 1, 1997, provides in relevant part: "(a) A contract or transaction between a corporation and a director thereof or a member of his immediate family, or between a corporation and any other corporation, firm or other organization in which a director of the corporation and members of his immediate family have an interest, shall not be voidable, and such director shall not incur any liability, merely because such director is a party thereto or because of such family relationship or interest, if: (1) Such family relationship or such interest, if it is a substantial interest, is fully disclosed, and the contract or transaction is not unfair as to the corporation and is authorized by (i) directors or other persons who have no substantial interest in such contract or transaction in such a manner as to be effective without a vote, assent or presence of the director concerned or (ii) the written consent of all of the directors who have no substantial interest in such contract or transaction, whether or not such directors constitute a quorum of the board of directors; or (2) such family relationship or interest, if it is a substantial interest, is fully disclosed, and the contract or transaction is approved by the affirmative vote of the holders of a majority of the voting power of the shares entitled to vote thereon; or (3) the contract or transaction is not with the director or a member of his immediate family and any such interest is not substantial, subject, however, to the provisions of subsection (b) of this section; or (4) the contract or transaction is fair as to the corporation. . . ."

The conflict of interest transaction statute effective January 1, 1997, contains a similar provision for disclosure and ratification by disinterested directors. See General Statutes § 33-783.

corporation, at least by a disinterested vote of the board of directors after full disclosure, the opportunity usually ceases to be a corporate opportunity." H. Henn & J. Alexander, Laws of Corporations (3d Ed. 1983) § 237, p. 636. "Rejection of the opportunity by a disinterested majority [of directors] should bar any challenge to subsequent exploitation by the executive . . . ." Note, "Corporate Opportunity," 74 Harv. L. Rev. 774 (1961). In addition, "the shareholders of the corporation ordinarily can ratify the transaction . . . ." W. Fletcher, Cyclopedia of the Law of Private Corporations (1994) § 862.05, p. 314.

In this case, the defendants disclosed the opportunity only to a single majority shareholder who is a member of the immediate family of one of them. That procedure was inadequate for two reasons. First, the minority shareholders of Avery Abrasives were never informed that Avery was pursuing for his own account a business opportunity in which the board had exhibited an interest. Second, owing to the fiduciary's close family relationship with the consenting director, Raymond Avery cannot be termed "disinterested" and, therefore, was not a proper person to authorize the defendants' pursuit of the opportunity, let alone to provide the sole consent on behalf of Avery Abrasives. We, therefore, conclude that the defendants failed to make an appropriate disclosure sufficient to justify their pursuit of a corporate opportunity.

### B

We next address the consequence of the failure of a corporate fiduciary adequately to disclose the possible existence of a corporate opportunity. Courts and commentators have developed three different approaches regarding the effect of such a disclosure or nondisclosure on the liability of such a fiduciary.

1

One approach, recently espoused in § 5.05 of the American Law Institute's Principles of Corporate Governance: Analysis and Recommendations (1992) (Principles of Corporate Governance), makes disclosure determinative of fiduciary liability. Section 5.05 (a) provides, in relevant part, that a director or senior executive may not take advantage of a corporate opportunity unless: "(1) The director or senior executive first offers the corporate opportunity to the corporation and makes disclosure concerning the conflict of interest . . . and the corporate opportunity . . . (2) The corporate opportunity is rejected by the corporation; and (3) Either: (A) The rejection of the opportunity is fair to the corporation; (B) The opportunity is rejected in advance, following such disclosure, by disinterested directors . . . or, in the case of a senior executive who is not a director, by a disinterested superior, in a manner that satisfies the standards of the business judgment rule . . . or (C) The rejection is authorized in advance or ratified, following such disclosure, by disinterested shareholders, and the rejection is not equivalent to a waste of corporate assets . . . ." This approach, which unequivocally imposes fiduciary liability in the absence of appropriate disclosure, has been followed by the courts of Maine and Oregon. *Northeast Harbor Golf Club, Inc.* v. *Harris*, 661 A.2d 1146, 1151–52 (Me. 1995); *Klinicki* v. *Lundgren*, 298 Or. 662, 682–83, 695 P.2d 906 (1985);[13] contra *Broz* v. *Cellular Information Systems, Inc.*, 673 A.2d 148, 157 (Del. 1996).

---

[13] Interpreting the American Law Institute's Principles of Corporate Governance standard as reported in an earlier tentative draft, the Oregon court explained: "If, after full disclosure, the disinterested directors or shareholders unreasonably fail to reject the offer, the interested director or principal senior executive may proceed to take the opportunity if he can prove the taking was otherwise 'fair' to the corporation. *Full disclosure to the appropriate corporate body is, however, an absolute condition precedent* to the validity of any forthcoming rejection as well as to the availability to the director or principal senior executive of the defense of fairness." (Emphasis added.) *Klinicki* v. *Lundgren*, supra, 298 Or. 682–83.

The bright line approach taken by the Principles of Corporate Governance has appeal. It promotes efficiency because it provides clear guidance both to corporate officers and directors and to the courts that are called upon to enforce fiduciary obligations. Also, it underscores the importance of timely disclosure in order to ensure timely corporate access to all of the information that the corporation needs to determine what course of action is in the corporation's best interest.[14]

A one-size-fits-all approach has, however, the drawback of any bright line rule. It offers no opportunity to differentiate among the variety of factual circumstances in which an alleged usurpation of a corporate opportunity may arise. In *Katz Corp.*, we implicitly rejected the claim that the "defendants should first have presented the opportunity to purchase stock to the corporation by calling a directors' or shareholders' meeting,"

---

In a more recent decision adopting that same standard, the Maine Supreme Court held that "[t]he central feature of the [American Law Institute] test is the strict requirement of full disclosure prior to taking advantage of any corporate opportunity." *Northeast Harbor Golf Club, Inc.* v. *Harris*, supra, 661 A.2d 1151. "If [the defendant] failed to offer the opportunity at all . . . then she may not defend on the basis that the failure to offer the opportunity was fair." Id., 1152.

Furthermore, the Pennsylvania Supreme Court, in the course of adopting other sections of the Principles of Corporate Governance dealing with derivative actions, has stated that "[c]ourts of the Commonwealth are free to consider other parts of [the Principles of Corporate Governance] and utilize them if they are helpful and appear to be consistent with Pennsylvania law." *Cuker* v. *Mikalauskas*, 547 Pa. 600, 613 n.5, 692 A.2d 1042 (1997).

[14] Commentators supporting a standard that makes disclosure mandatory and dispositive have noted that, "when the fiduciary decides that the corporation is financially unable to take the opportunity, he is substituting his own judgment for that of the board of directors or shareholders." D. Brown, supra, 28 Corporate Practice Commentator 516. The "[a]vailability of the defense of corporate incapacity reduces the incentive to solve corporate financing and other problems," and recognizes that evidence regarding the corporation's financial status is often within the control of the diverter. V. Brudney & C. Clark, supra, 94 Harv. L. Rev. 1020–22. They argue that "the appropriate method to determine whether or not a corporate opportunity

because no corporate opportunity existed within the meaning of the avowed business purpose test and the corporation was financially unable to pursue the venture. *Katz Corp.* v. *T. H. Canty & Co.*, supra, 168 Conn. 209–10; see also *Bricklin* v. *Stengol Corp.*, 1 Conn. App. 656, 666, 476 A.2d 584, cert. denied, 194 Conn. 803, 482 A.2d 709 (1984). In a related context, we have refused to apply a bright line rule to determine whether, for res judicata purposes, corporate officers or shareholders are in privity with their corporation. *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 868, 675 A.2d 441 (1996), citing *Amalgamated Sugar Co.* v. *NL Industries, Inc.*, 825 F.2d 634, 640 (2d Cir.), cert. denied, 484 U.S. 992, 108 S. Ct. 511, 98 L. Ed. 2d 511 (1987). Without denying the significance of timely and full disclosure, we decline to adopt a bright line rule in this area of fiduciary responsibility.

2

Another case law approach focuses less on adequate disclosure by a corporate fiduciary and more on whether affirmative defenses, such as the corporation's financial inability to avail itself of the corporate opportunity at issue, can be proven by the corporate fiduciary. That was implicitly the position that we took in *Katz Corp.* v. *T. H. Canty & Co.*, supra, 168 Conn. 210. We reasoned that "there can be no expectancy in a transaction unless the corporation is financially able to undertake it." Id. Accordingly, we rejected the plaintiffs' claim for relief in part because the corporation's "cash on hand and liquid assets were insufficient to enable it to make such a substantial purchase." Id.

Courts in other jurisdictions similarly afford the corporate fiduciary the opportunity to prove, as an affirmative defense, that the corporation lacked the financial

exists is to let the corporation decide at the time the opportunity is presented." 3 W. Fletcher, supra, § 861.10, p. 285; 1 A.L.I., Principles of Corporate Governance, supra, § 5.05, pp. 299–300, reporter's notes.

ability to pursue the opportunity. Some courts permit such a defense in all cases. See, e.g., *Paulman* v. *Kritzer*, 74 Ill. App. 2d 284, 292–96, 219 N.E.2d 541 (1966), aff'd, 38 Ill. 2d 101, 230 N.E.2d 262 (1967). Other courts limit the defense of financial inability to cases in which the defendant corporation can be proven to have been insolvent at the relevant time. See, e.g., *Irving Trust Co.* v. *Deutsch*, 73 F.2d 121, 124 (2d Cir. 1934), cert. denied, 294 U.S. 708, 55 S. Ct. 405, 79 L. Ed. 1243 (1935); note, supra, 74 Harv. L. Rev. 773.[15]

We agree with the perception of those courts that a claim of usurpation of a corporate opportunity should be examined through a wide-angled lens that takes account of a large variety of relevant factors. Nonetheless, we are persuaded by the learned discussion in the Principles of Corporate Governance that a proper multifactor analysis must give special weight to the significance of disclosure or nondisclosure of a possible corporate opportunity to the corporation's board of directors or its shareholders. In our view, without such special weight, a multifactor analysis gives insufficient guidance to the trier of fact.

3

Adopting yet a third form of analysis, the Delaware Supreme Court, in *Broz* v. *Cellular Information Systems, Inc.*, supra, 673 A.2d 148, recently enunciated a safe harbor rule. The court concluded that, if a corporate fiduciary made a timely and appropriate disclosure of the opportunity to the corporation's board, the fiduciary would automatically have discharged his or her fiduciary obligation. Id., 157. "[P]resenting the opportunity to the board creates a kind of 'safe harbor' for

---

[15] Still others make the corporation's financial ability to pursue the opportunity a condition precedent to a finding of corporate opportunity, placing the burden on the plaintiff corporation. See *Miller* v. *Miller*, supra, 301 Minn. 225; see also *Racine* v. *Weisflog*, 165 Wis. 2d 184, 195, 477 N.W.2d 326 (1991); D. Brown, supra, 28 Corp. Prac. Commentator 520–21.

the director, which removes the specter of a post hoc judicial determination that the director or officer has improperly usurped a corporate opportunity." Id.[16]

The court in *Broz* declined to hold that nondisclosure, per se, constituted usurpation of a corporate opportunity. Rejecting the contrary view of the Principles of Corporate Governance, the court decided against the adoption of a "requirement of formal presentation under circumstances where the corporation does not have an interest, expectancy or financial ability." Id., 157. Instead, relying on principles derived from *Guth* v. *Loft, Inc.*, supra, 23 Del. Ch. 255, and its progeny, the court considered whether: "(1) the corporation [was] financially able to exploit the opportunity; (2) the opportunity [was] within the corporation's line of business; (3) the corporation [had] an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary [would] thereby be placed in a position inimicable to his duties to the corporation." *Broz* v. *Cellular Information Systems, Inc.*, supra, 673 A.2d 155. Applying that test, the court in *Broz* determined that, in light of the relevant circumstances, the corporate fiduciary in that case had not usurped an opportunity that properly belonged to the corporation. Id., 157.

We adopt, for Connecticut, two major propositions of law decided by *Broz*. We agree with the principle that adequate disclosure of a corporate opportunity is an absolute defense to fiduciary liability for alleged usurpation of such a corporate opportunity. A corporate fiduciary who avails himself or herself of such a safe

[16] In a subsequent corporate opportunity case, the same court reiterated that "[a] director who opts not to inform the board of the opportunity acts at his peril, unless he is ultimately able to demonstrate post hoc that the corporation was not deprived of an opportunity in which it had an interest in or capability of engaging." *Thorpe by Castleman* v. *CERBCO, Inc.*, 676 A.2d 436, 442 n.7 (Del. 1996).

harbor should not be held accountable subsequently for opportunities embraced or forgone. The criteria for adequate disclosure are those that we have discussed earlier in this opinion. We also agree that, without prior adequate disclosure, a corporate fiduciary still may prove bona fides by clear and convincing evidence, by establishing that his or her conduct has not harmed the corporation. We add, however, that, in assessing such harm, the trier of fact must give special weight to the effect of nondisclosure on the corporation's entrepeneurial opportunities.[17]

The Delaware court's decision in *Broz*, moreover, does not make explicit the proper allocation of the burden of proof with regard to these affirmative defenses of corporate fiduciaries. We reiterate, therefore, that, in Connecticut, corporate fiduciaries bear the burden of proving, by clear and convincing evidence, that they have not usurped a corporate opportunity. If they wish to take advantage of a safe harbor, corporate fiduciaries must establish the adequacy of their disclosures to the corporation. In the absence of such disclosures, corporate fiducaries like the present defendants must prove that, in light of the relevant circumstances outlined in *Broz*, they did not deprive the corporation of an opportunity that the corporation could have pursued. The fact of nondisclosure, although accorded special weight in this determination, is not dispositive. The factual backdrop for these issues in the circumstances of this case will need to be explored further on remand.[18]

---

[17] If, for example, the evidence adduced with respect to a corporate fiduciary's alleged usurpation of a corporate opportunity were in equipoise, the trier of fact should conclude, in the absence of appropriate disclosure, that the fiduciary had failed to sustain his burden of proof.

[18] The trial court refused to hold the defendants in this case to the elements of the law of corporate opportunity as we have described them. It took the position that applicable common-law and analogous statutory principles concerning corporate disclosure requirements, without definitive appellate guidance, could not be applied to the defendants without violating principles against retroactivity. We disagree.

## IV

Finally, we must consider certain issues that are likely to arise again on remand. The principal remaining issue is the propriety of the trial court's conclusion that the conduct of the defendants in this case did not violate § 42-110a et seq., CUTPA.

The trial court found that the plaintiffs had failed to establish that the defendants had engaged in any unfair or deceptive trade practice. As discussed above, however, that finding cannot stand because the trial court improperly allocated to the plaintiffs the burden of proof with respect to their claims of violations of fiduciary duty.

If the retrial results in findings of violations of fiduciary duty, the question remains whether such misconduct constitutes an unfair and deceptive trade practice within the meaning of CUTPA. CUTPA "applies to a

---

In *Neyland* v. *Board of Education*, 195 Conn. 174, 179, 487 A.2d 181 (1985), we discussed the three-part test set out in *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), for determining whether a decision must be applied prospectively only. A common-law decision will be applied nonretroactively only if: (1) it establishes "a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (citations omitted) *Neyland* v. *Board of Education*, supra, 179; (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship. Id., 180.

Our decision today neither establishes a new principle of law nor works substantial inequitable results on corporate fiduciaries who relied on our earlier cases. The conclusion that a defendant in a corporate opportunity case bears the burden of establishing fair dealing by clear and convincing evidence has long been established in our corporate fiduciary law. To the extent that we decide an issue of first impression in adopting the safe harbor approach to disclosure, we do not announce a new rule of law but expand upon our decision in *Katz Corp.* v. *T. H. Canty & Co.*, supra, 168 Conn. 201. Furthermore, the availability of such a safe harbor provides a defense and, therefore, cannot harm the defendants. Thus, the framework we set out for analyzing claims of usurpation of a corporate opportunity is applicable to the defendants.

broad spectrum of commercial activity." *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 492, 656 A.2d 1009 (1995). The act states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). The act defines "trade or commerce" broadly to encompass "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a (4). "The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Citations omitted; internal quotation marks omitted.) *Larsen Chelsey Realty Co.* v. *Larsen*, supra, 492.

Although purely intracorporate conflicts do not constitute CUTPA violations, actions outside the scope of the employment relationship designed "to usurp the business and clientele of one corporation in favor of another . . . fit squarely within the provenance of CUTPA." *Fink* v. *Golenbock*, 238 Conn. 183, 212, 680 A.2d 1243 (1996). In *Larsen*, a case involving claims of breach of fiduciary duty, unfair competition, theft of a corporate opportunity and tortious interference with a business relationship, we concluded that the trial court had improperly set aside the jury's finding of a CUTPA violation. *Larsen Chelsey Realty Co.* v. *Larsen*, supra, 232 Conn. 493. Therefore, on remand, once all the relevant facts are established, in accordance with the proper allocation of proof, the trial court must determine whether the defendants' conduct constituted a CUTPA violation.

Furthermore, on remand, the trial court must determine whether Avery's misconduct, if any, constituted a negligent breach of his duty to Avery Abrasives and

its shareholders. If the plaintiffs can persuade the court that Avery is so liable, the court then must resolve the plaintiffs' fraudulent conveyance claim against Antoinette Avery.

By way of summary, it is settled that the plaintiffs have met their burden of proving that: (1) both defendants stood in a fiduciary relationship to Avery Abrasives; and (2) the manufacture of small wheels constituted a corporate opportunity belonging to Avery Abrasives. It also is settled that the defendants failed to meet their burden of proving that they had made disclosure sufficient to avail themselves of the safe harbor. At the retrial, it remains to be determined whether the defendants can prove by clear and convincing evidence any of their affirmative defenses. Once the trial court determines whether the defendants have met their burden of proof with respect to these affirmative defenses, the trial court can then determine whether it needs to address the CUTPA and negligence claims.

The judgment is reversed and the case is remanded to the trial court for a new trial in accordance with this opinion.

In this opinion the other justices concurred.