Aldo LORENZETTI, Jr., Plaintiff,

v.

Joel M. JOLLES, Esq., Defendant.

No. 3:98CV00340 (JBA).

United States District Court,
D. Connecticut.

July 21, 2000.

Jon L. Schoenhorn, Law Offices of Jon L. Schoenhorn, Hartford, CT, John M. Wolfson, Hartford, CT, for Plaintiff.

Paul E. Pollock, Bai, Pollock & Coyne, Bridgeport, CT, for Defendant.

## RULING ON POST–TRIAL MOTIONS
### (Doc. # 65, 70 and 71)

ARTERTON, District Judge.

## I. INTRODUCTION

Plaintiff Aldo Lorenzetti brought this action against his former attorney, Joel M. Jolles, claiming that Jolles committed legal malpractice when he settled Lorenzetti's case against Fleet Bank without Mr. Lorenzetti's consent to do so. The jury found that Mr. Jolles had committed malpractice by settling Mr. Lorenzetti's case against the Bank and allowing judgment to enter, all without Mr. Lorenzetti's authorization. The jury then went on to determine whether Mr. Lorenzetti would have been successful in the underlying action, but for Mr. Jolles' unauthorized settlement, and found that Mr. Lorenzetti would have prevailed on his CUTPA claim against the Bank, although not on his breach of contract and breach of fiduciary duty claims. The jury awarded damages in the amount of $225,000, and defendant filed motions for a new trial (Doc. # 65) and for judgment as a matter of law (Doc. # 64).

Plaintiff moves for an award of attorney's fees.[1]

## II. Factual Background

Viewing all disputed facts as decided in the plaintiff's favor, as the Court is required to do at this juncture, *see Doctor's Assoc., Inc. v. Weible,* 92 F.3d 108, 112 (2d Cir.1996), the relevant factual background is as follows. Aldo Lorenzetti worked as a builder and developer of real estate properties, and in the 80's he began to develop a piece of property in Charlestown, Rhode Island, where he intended to build his home, in addition to a horse farm. While developing this property, a portion of the adjoining property ("Daniels property") became available to Mr. Lorenzetti, and after the owner of the property passed away, the estate agreed to sell the property to him. Over the course of the 1980's, Mr. Lorenzetti had developed a close relationship with Robert J. McCarthy, Mr. Lorenzetti's personal banker at Connecticut National Bank (CNB), later Shawmut Bank. Mr. McCarthy had made a standard practice of loaning money to Mr. Lorenzetti for his various real estate transactions, without requiring a written application. When the opportunity to purchase the Daniels property arose, Mr. Lorenzetti contacted McCarthy, who assured him that CNB would provide the loan. CNB later reneged on this commitment, and "classified" Mr. Lorenzetti's other loans with the Bank. He was therefore unable to purchase the Daniels property, which was ultimately sold to an unrelated third party.

On June 30, 1993 Mr. Lorenzetti, originally represented by Attorney John Rose, commenced suit against Fleet Bank, as the successor to CNB and Shawmut (the "Bank litigation"). The claims were for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, misrepresentation, and CUTPA violations based on the Bank's failure to provide the promised loan funds. That case was removed to federal court based on diversity of the parties, and Fleet counterclaimed against Mr. Lorenzetti seeking collection of a $100,000 debt allegedly owed by Mr. Lorenzetti. Mr. Rose eventually withdrew from the case, due to a conflict at his firm, and Mr. Jolles filed an appearance on behalf of Mr. Lorenzetti. On the day of jury selection in the Bank litigation, Mr. Jolles and Bank counsel Ben Krowicki entered a verbal settlement agreement into the record, although the agreement was never reduced to writing. The settlement, which became an official judgment thirty days later when no motions to reopen were filed, provided that Mr. Lorenzetti would drop his claims against the bank, and pay $100,000 on the counterclaim to the Bank.

Mr. Lorenzetti claimed that Mr. Jolles mishandled the Bank litigation, in that he entered into a settlement and allowed judgment to enter against Mr. Lorenzetti without his permission. He brought suit against Mr. Jolles for legal malpractice, and the case was tried to a jury from October 18 until October 26, 1999. The jury found that Attorney Jolles had committed malpractice by settling Mr. Lorenzetti's case without his permission, and went on to decide whether Mr. Lorenzetti would have prevailed on his underlying claims against the Bank. While the jury found that Mr. McCarthy owed a fiduciary obligation to Mr. Lorenzetti, it determined that he had not breached that obligation, nor had the Bank breached any contractual obligations to Lorenzetti. The jury did find that the Bank had committed an unfair or deceptive trade practice and had therefore violated CUTPA when it promised to provide the loan funds and then later reneged on that agreement, and in-

---

1. Plaintiff's request for attorney's fees was not docketed as a motion; rather, it appears in his Post–Trial Brief (Doc. # 68), which was submitted in accordance with the schedule set by the Court after the jury verdict was ren-

dered on October 28, 1999. Plaintiff has subsequently filed a Preliminary Memorandum of Law in Support of Plaintiff's Motion for Hearing on Attorney's Fees (Doc. # 74), but no motion accompanied the brief.

stead took adverse action on his other loans.

The jury awarded $225,000 in damages for the CUTPA violation, and defendant moved for a new trial and for judgment as a matter of law. Specifically, in his motion for judgment as a matter of law, defendant contends that 1) since the jury found no fiduciary breach and no breach of contract, there can be no CUTPA violation; 2) the evidence presented did not provide sufficient basis for the jury to find an ascertainable loss, a necessary threshold for a CUTPA claim; 3) as there was no right to a jury trial at the time of the underlying litigation, the Court should have decided the CUTPA claim rather than the jury; and 4) there was insufficient evidence to establish a CUTPA claim against the Bank. Defendant's motion for a new trial is premised on the arguments that the damages awarded by the jury were excessive, and that plaintiff presented insufficient evidence to establish a CUTPA violation by the Bank.

### III. Procedural Background

Following the jury's verdict on October 18, 1999, the Court set a simultaneous briefing deadline of November 12, 1999 to address the issues raised by the defendant in the current motions. Defendant Jolles filed his motions for judgment as a matter of law and for a new trial on November 5, 1999. The Court denied these motions for failure to comply with District of Connecticut Local Rule 9(a)(1), which requires an accompanying memorandum in support be filed with each motion. Jolles has subsequently moved for reconsideration of these rulings, explaining that counsel for the defendant received the judgment dated November 1, 1999, and was unclear as to whether the briefs were to be filed by the date set by the Court or within the ten days set out in Federal Rule of Civil Procedure 59(b). Out of an abundance of caution, defendant apparently filed his motion within the ten days required by the Federal Rules, and submitted his briefs in support on November 12, 1999.

■ The Second Circuit has stated that reconsideration is appropriate only under certain conditions: an intervening change in controlling law, new evidence, or the need to correct a clear error of law or to prevent manifest injustice. *See United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir.1994). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). A motion to reconsider "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* at 257.

■ Even under these strictures, the Court determines that reconsideration is appropriate in the present circumstances. Although counsel could have resolved any seeming inconsistencies between the two deadlines by filing his motion and accompanying memorandum within the ten days allowed in Rule 59(b), his excuse is not unwarranted. Recently the Second Circuit saw fit to remind the bar, and presumably the bench, that "the individual practice rules of a district judge must be read in conjunction with the Federal Rules of Civil Procedure and that the Federal Rules and their jurisdictional filing dates supersede any seemingly contrary district court practice rule." *Fruit of the Loom, Inc. v. American Marketing Enterprises*, 192 F.3d 73, 74 (2d Cir.1999). Given this admonishment, and the severity of the consequences to defendant resulting from stringent application of the Local Rule, the Court will reconsider its previous rulings, and decide defendant's motions on the merits, now with the benefit of defendant's Supporting Memorandum of Law.

## IV. DISCUSSION

### A. Standard

On a motion for judgment as a matter of law pursuant to Rule 50(b), a district court may grant a motion for judgment as a matter of law only if:

> there exists "such complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or the evidence in favor of the movant is so overwhelming "that reasonable and fair minded [persons] could not arrive at a verdict against [it]."

*Luciano v. The Olsten Corp.*, 110 F.3d 210, 214 (2d Cir.1997) (*quoting Cruz v. Local Union No. 3*, 34 F.3d 1148, 1154 (2d Cir. 1994)). "Judgment n.o.v. is proper 'only if the evidence viewed in the light most favorable to the non-movants, without considering credibility or weight, reasonably permits only a conclusion in the movant's favor.'" *Weible*, 92 F.3d at 112, *quoting Baskin v. Hawley*, 807 F.2d 1120, 1129 (2d Cir.1986).

Defendant Jolles also moves for a new trial under Rule 59, which gives a federal judge authority to grant a new trial on the grounds that the verdict was against the weight of the evidence. "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' ..." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant a motion when the jury's verdict is 'egregious.'" *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).

### B. Defendant's Motion for Judgment as a Matter of Law

The focus of defendant's argument in this motion is on the alleged inconsistency between the jury's verdict on the fiduciary and contract claims and its verdict on the CUTPA claim. According to defendant, the jury's finding that the Bank did not breach any fiduciary obligations to Lorenzetti necessarily dictates that there can be no CUTPA violation, because the CUTPA claim is simply a "recasting" of the allegations in the count alleging fiduciary violations. Defendant provides no cases that directly support his position, and instead extracts one sentence from the Connecticut Supreme Court's opinion in *Ostrowski v. Avery*, 243 Conn. 355, 378, 703 A.2d 117 (1997). Minority shareholders in that case brought suit against a vice-president and employee of the corporation, alleging usurpation of a corporate opportunity. The trial court found that while the defendants were fiduciaries of the plaintiffs, they had not breached their fiduciary obligations, nor had their conduct violated CUTPA. The Connecticut Supreme Court reversed and remanded because the trial court had failed to properly allocate the burden of proof for proving breaches by corporate fiduciaries. The court then went on to discuss issues that would arise on remand, noting that:

> if the retrial results in findings of violations of fiduciary duty, the question remains whether such misconduct constitutes an unfair and deceptive trade practice within the meaning of CUTPA.

*Id.* at 378, 703 A.2d 117. Defendant points to this sentence as support for his contention that a fiduciary violation is a predicate for a CUTPA claim. However, the Court does not read so much into the conditional "if" beginning that sentence. The wording chosen by the Connecticut Supreme Court in the above quote does not eliminate the circumstance in which the misconduct alleged may independently constitute an unfair or deceptive trade practice, even in the absence of a fiduciary violation.

Because CUTPA is a self-avowed remedial statute, *see* Conn.Gen.Stat. 42–110b(d), it is construed liberally in order to effectuate its public policy goals of protecting consumers. *Sportsmen's Boating Corp. v.*

*Hensley,* 192 Conn. 747, 755, 474 A.2d 780 (1984). Defendant's narrow read of the statute does not square with the broad remedial scope given the statute. Indeed, as noted by the Connecticut Supreme Court, "the action established by CUTPA provides a remedy for a wider range of business conduct than does the common law, and CUTPA exists wholly independent of any common law claim." *Associated Investment Company Limited Partnership v. Williams Associates IV,* 230 Conn. 148, 161, 645 A.2d 505 (1994). The language of the statute does not define the scope of unfair or deceptive acts proscribed, and interpreting courts have determined that this omission was purposeful, to allow courts to develop a body of law responsive to marketplace practices that actually generate such complaints. *See, e.g., Sportsmen's Boating Corp. v. Hensley,* 192 Conn. 747, 755, 474 A.2d 780 (1984). That these practices may not be actionable under the rubric of traditional common law remedies does not foreclose an action under CUTPA, because there is "no ... unfair method of competition, or unfair [or] deceptive act or practice that cannot be reached [under CUTPA]." Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 705, remarks of Attorney Robert Sils, Dept. of Consumer Protection.

■ Given these legal principles, the Court is persuaded that plaintiff presented sufficient evidence to support the jury's verdict on the CUTPA claim, even if no fiduciary violation or breach of contract was found. The jury was instructed on the appropriate legal standards for determining whether a practice was unfair or deceptive. The jury heard testimony that Robert McCarthy made repeated promises to Mr. Lorenzetti that the money was forthcoming, and that Mr. Lorenzetti relied on those promises from his "personal banker" and did not seek alternate funding sources. The jury could have found that when faced with scrutiny by banking regulators, CNB then classified Lorenzetti's loans, foreclosed on the Montauk Road property, and imposed overcharges and an improper interest rate on Lorenzetti as part of the foreclosure, all without any warning to Mr. Lorenzetti and without justification. Although Mr. McCarthy may not have breached his obligations as a fiduciary in doing so, the interests protected by fiduciary duties and the CUTPA statute are not necessarily congruent such that a finding of no fiduciary breach necessarily negates the finding of a CUTPA violation. Based on the above facts, the jury could have concluded that while Mr. McCarthy met his fiduciary obligations as a bank officer generally, his personal relationship and specific history with Mr. Lorenzetti was such that the Bank's abrupt reversal of position, without any warning, constituted deceptive, oppressive or unscrupulous conduct which caused substantial injury to consumers. Defendant's motion for judgment as a matter of law on these grounds is therefore denied.

■ Defendant also contends that plaintiff failed to establish an "ascertainable loss" as a result of any CUTPA violation of the Bank, because Mr. Lorenzetti failed to establish that he would have been able to purchase the Daniels property even if he had received the necessary funds from the Bank. "The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." *Service Road Corp. v. Quinn,* 241 Conn. 630, 638, 698 A.2d 258 (1997). Ascertainable loss has been defined by Connecticut courts as "a deprivation, detriment [or] injury that is capable of being discovered, observed or established." *Hinchliffe v. American Motors Corp.,* 184 Conn. 607, 613, 440 A.2d 810 (1981). However, as the term 'loss' is broader than the term 'damages,' CUTPA does not require a successful plaintiff to prove a specific amount of actual damages. *Id.* at 613, 440 A.2d 810.

■ Defendant argues Mr. Lorenzetti presented insufficient evidence that Ms.

Simpson, the seller of the Daniels property, was willing to go through with the sale at the time that the Bank was obligated to provide the funds. According to defendant, the Bank conditioned the loan on receiving proof that plaintiff had rented his current house and on receiving an appraisal of the property; since plaintiff did not provide the appraisal until January of 1991, the argument continues, he needed to present evidence that the sale could have been consummated at that time, which he failed to do.

Contrary to defendant's argument, the jury could have found that Lorenzetti would have been able to purchase the property had the Bank fulfilled its promises to him. Lorenzetti testified that his original agreement with Ms. Simpson was to purchase the property for $65,000; after a five or six month delay on the Bank's part, she became "antsy," according to Mr. Lorenzetti, and sent him a letter rescinding the $65,000 purchase price and offering the property at $125,000 instead. The plaintiff testified that he still would have purchased the property at that price, and that based on his conversations with Ms. Simpson, he still could have obtained the property for $125,000 up until March of 1991. The fact that the property ultimately sold in August of that year for only $5,000 over the agreed-upon price with Lorenzetti provides further support for this view. Def.Ex. 9. The jury believed plaintiff's testimony on this point, which they were entitled to do. The jury was also entitled to credit plaintiff's testimony that the lease and the appraisal were not formal requirements of the Bank, but were instead suggested by Mr. McCarthy as a way of expediting the processing of the loan. Plaintiff testified without contradiction by defendant that on numerous previous occasions he had requested and received loans from the Bank without formal application, appraisals, or any supporting documentation. The January 1991 date thus does not have the dispositive significance defendant assigns it such that

the purchase price of the property should only be measured as of that date.

While reasonable minds could certainly differ on the conclusions to draw from the evidence in the record, defendant has not demonstrated that the jury's verdict is so against the weight of the evidence that it could only be the result of surmise or conjecture. The evidence presented by the plaintiff was sufficient to demonstrate that he suffered an ascertainable loss as required by CUTPA, even if the actual amount of this loss was not proved with precision. Defendant's motion on these grounds is therefore denied.

Finally, defendant argues that the CUTPA claim should not have been tried to the jury, because at the time of the underlying litigation against the Bank there was no right to a jury trial for CUTPA violations. Defendant makes an intricate argument regarding the effective date of Public Act No. 95–123, which amended Conn.Gen. Stat. 42–110g to provide a right to a trial by jury in CUTPA actions, overturning in part *Williams Associates IV*, see discussion *supra* at 185–86. According to defendant, this case was set down for trial during the short period of time in which *Williams Associates IV* still controlled, and therefore the underlying litigation would have been decided by a judge rather than a jury.

Defendant overlooks two central facts in reaching his conclusion, however. First, even before the statute was amended, federal and state courts could, on the application of either party, order any issue of fact arising under CUTPA to be tried by a jury. *Williams Associates IV*, 230 Conn. at 161, n. 17, 645 A.2d 505. As the unauthorized settlement in this case was entered into *on the day of jury selection*, the Court presumes that Judge Daly had exercised that discretion and would have allowed the case against the Bank to proceed before a jury. Second, defendant's emphasis on the procedural posture of the Bank case at the time it was initially litigated misses the point that the parties are

now litigating a legal malpractice case. Although an element of plaintiff's claim is whether he would have succeeded in his underlying suit, the Court is not obligated to exactly replicate the previous case in order to determine whether he would have proved his claims against the Bank by a preponderance of the evidence. Plaintiff's right to trial by jury in his legal malpractice case is preserved by the Seventh Amendment. *See In re SPI Communications and Marketing Inc.*, 112 B.R. 507 (Bankr.N.D.N.Y.1990) (debtor seeking malpractice tort damages against attorney entitled to jury trial); *Woods v. Dunlop Tire Corp.*, 673 F.Supp. 117 (W.D.N.Y. 1987) ("There is no question that a legal malpractice claim is an action at law and therefore entitles a plaintiff to jury trial.") Even if the Court accepted defendant's argument that state law would not have provided a jury trial at the time the litigation against the Bank was brought, this constitutional right trumps any state rule to the contrary. The Court therefore declines defendant's invitation to decide the CUTPA issue, and the jury's verdict will stand.

## C. Defendant's Motion for a New Trial

Defendant also seeks a new trial, arguing that the jury was improperly instructed on damages; that there was insufficient evidence to demonstrate a CUTPA violation; that there was insufficient evidence of an ascertainable loss; and that the award of damages was excessive. Doc. # 65. Defendant's motion for a new trial on grounds of insufficient evidence for the CUTPA violation and ascertainable loss duplicate his arguments in his motion for judgment as a matter of law, and for the reasons outlined above the motion is denied.

While captioned as an excessiveness argument, defendant's brief makes clear his contention that a new trial is warranted on grounds that plaintiff failed to demonstrate that he would have been able to purchase the property in January of 1991 had the bank furnished the funds as promised. As discussed above, however, the plaintiff's evidence was sufficient for the jury to conclude that Mrs. Simpson would have gone through with the sale for $125,000 in March of 1991, and that January of 1991 was not the relevant measuring point for determining the likelihood of the sale.

■ Defendant makes an additional argument that since Mr. Lorenzetti failed to prove that would have been able to get the funds from another bank had he been advised that CNB was not making the loan, he failed to prove that his damages were the result of the bank's actions. This argument, however, was not the subject of defendant's Rule 50(a) motion at the close of plaintiff's case, and could thus be denied on this ground. *See Holmes v. United States*, 85 F.3d 956 (2d Cir.1996) ("Together Rules 50(a) and (b) limit the grounds for judgment n.o.v. to those specifically raised in the prior motion for a directed verdict."). Defendant's contention on this point also misunderstands the nature of plaintiff's claim. Mr. Lorenzetti sought damages for the Bank's violation of CUTPA, both in failing to provide the promised funds *and* in classifying his loans, such that he was unable to get other financing. Mr. Lorenzetti's failure to get financing from another bank was thus part of his proof on the CUTPA claim, not evidence that the jury should have considered to be favorable to the Bank.

Finally, defendant challenges the Court's charge to the jury on the damages, claiming that it "allowed the jury to ascertain damages not allowed under the law." Doc. # 65. Defendant's brief does not address this contention, and the Court is therefore unable to ascertain which aspect of the damages charge defendant believes is contrary to the law.

In its charge on the damages recoverable under CUTPA, the Court instructed the jury that Mr. Lorenzetti bore the burden of proof, and that it could only award damages for those losses which Mr. Lorenzetti had proven that he actually suffered

as a result of the unlawful conduct of the Bank. Doc. # 56 at p. 33. In reminding the jury that an award under CUTPA could not be based on speculation, the Court again reiterated that the jury could "only consider whether Mr. Lorenzetti has proven by a preponderance of the evidence that he suffered actual losses as a result of this unlawful conduct." *Id.* This instruction squares with the statutory language, *see* Conn.Gen.Stat. § 42–110g(a), and Connecticut case law on the subject. *See, e.g. A. Secondino & Son, Inc. v. LoRicco,* 215 Conn. 336, 343, 576 A.2d 464 (1990) (Plaintiff seeking to recover damages under CUTPA must present evidence that provides basis for reasonable estimate of the damages suffered; "[w]hile CUTPA damages need not be proven with absolute precision, the failure to present any evidence concerning the nature and extent of the injury sustained precludes recovery under the statute.").

The jury instruction properly informed the jury of the plaintiff's burden in proving damages and the measure of damages under CUTPA. As defendant does not dispute the general principle that the measure of damages in a malpractice action is the value of the lost claim, 90 A.L.R.4th 1033 § 3 (1992), this instruction appropriately guided the jury in ascertaining the amount of damages proven. As defendant has failed to articulate any specific objection to the damages charge as a whole, defendant's motion is accordingly denied.

D. Attorney's Fees

 Plaintiff seeks an evidentiary hearing on the amount of attorney's fees that should be awarded to him for his successful prosecution of his claim. Under the American rule, adhered to in Connecti-

cut, attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. *24 Leggett Street Limited Partnership v. Beacon Industries, Inc.,* 239 Conn. 284, 310–311, 685 A.2d 305 (1996). Plaintiff cites to that provision of CUTPA which authorizes a court to award attorney's fees "[i]n any action brought by a person under this section ... based on the work reasonably performed by an attorney and not on the amount of recovery." Conn.Gen.Stat. 42–110g(d). This statute, however, does not provide for an award of attorney's fees in a legal malpractice action, nor does plaintiff point to any contractual language between the parties that would authorize attorney's fees in this malpractice case. Instead, plaintiff claims legal fees by implication: since Mr. Lorenzetti would have been able to recover attorney's fees in his underlying claims against the Bank, as demonstrated by the jury's verdict, he is therefore entitled to seek them for the costs of litigating these claims in the trial-within-a-trial of his malpractice case.

The plaintiff cites to no Connecticut case addressing this issue, nor can the Court locate such precedent.[2] Several courts have allowed attorney's fees as part of the recovery in legal malpractice claims, under the theory that such fees are necessary to place the plaintiff in the same position he would have been in had the attorney not breached the applicable standard of care. *See Foster v. Duggin,* 695 S.W.2d 526, 527 (Tenn.1985) ("The additional fees necessary to pursue this [legal malpractice] action are in the nature of incidental damages flowing from [the lawyer's] breach of the contract."); *Winter v. Brown,* 365 A.2d

---

**2.** The Second Circuit affirmed a district court's decision denying attorney's fees in *Banker v. Nighswander, Martin & Mitchell,* 37 F.3d 866 (2d Cir.1994), concluding that because there was no statute or court decision allowing attorney's fees in malpractice actions, the New Hampshire legislature and state courts were the proper forum for determining whether public policy required the award of attorney's fees in malpractice actions. In this case, however, the statute in the underlying case provided for an award of attorney's fees, and had Attorney Jolles properly taken Mr. Lorenzetti's case to trial, he would have been entitled to attorney's fees for his success on the CUTPA claim. *Banker* therefore does not preclude an award in these circumstances.

381, 386 (D.C.1976) (In legal malpractice action, clients' damages "include the cost of additional litigation in order to recover on their original claim").

In a legal malpractice case involving an underlying claim of employment discrimination, the Supreme Court of Wisconsin held that the plaintiff was entitled to attorney's fees for that portion of her counsel's work related to the underlying discrimination claim. *Glamann v. St. Paul Fire and Marine Ins. Co.*, 144 Wis.2d 865, 424 N.W.2d 924 (1988). The court had previously allowed attorney's fees for claims under Wisconsin's antidiscrimination statute, as consistent with that statute's purpose of making victims of discrimination "whole." 424 N.W.2d at 927. The court concluded that because of the "case within a case nature of this malpractice action," the plaintiff must prove that she was unlawfully discriminated against in order to prevail in her legal malpractice claim, and that therefore she was entitled to reasonable attorney's fees. *Id.*

*Glamann*'s reasoning is equally applicable to the present case. CUTPA provides for attorney's fees as a way of effectuating the statute's policy goal of protecting consumers, to encourage litigants to act as private attorneys general. *See Gill v. Petrazzuoli Bros., Inc.*, 10 Conn.App. 22, 33, 521 A.2d 212 (1987). While the case against Attorney Jolles was not a CUTPA claim, plaintiff had to prove the elements of his underlying CUTPA claim in order to prevail in front of the jury. In the absence of Mr. Jolles' unauthorized settlement of his case, Mr. Lorenzetti would have been able to recover attorney's fees from the Bank in the trial of his CUTPA claim. The Court concludes that plaintiff can only be made whole if he is allowed to recover the entirety of what he would have received in the underlying CUTPA action.

■ Defendant also seeks to limit the scope of an attorney's fees award, arguing that Mr. Lorenzetti is only entitled to the few thousand dollars he paid Mr. Jolles in retainer. He cites no Connecticut authori-

ty in support of this contention, and as the Court concluded above, the plaintiff should be entitled to recover the full amount he would have received in the underlying case, had it gone to trial. To the extent defendant suggests that the Court should separate out the fees incurred in prosecuting the underlying CUTPA claim from the underlying breach of contract and fiduciary duty claims, as Mr. Lorenzetti did not prevail on these claims at his malpractice trial, the Court is unpersuaded. The successful and unsuccessful underlying claims were inextricably intertwined, as they involved a common core of facts and were proved by the same evidence. The Court may therefore award fees for the prosecution of the entire underlying case, even though the jury did not find in Mr. Lorenzetti's favor on all his claims in the underlying case against the Bank. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir.1996) (In Title VII action, trial court did not abuse discretion in refusing to reduce attorney's fees award to account for lack of success on some claims). The Court is persuaded, however, that in accordance with *Banker* and *Jacques All Trades Corp. v. Brown*, 57 Conn.App. 189, 752 A.2d 1098 (2000), Mr. Lorenzetti is only entitled to recover those fees reasonably related to the prosecution of his CUTPA claim, and not the legal malpractice portion of the case.

The plaintiff will therefore file a properly documented fee petition consistent with the foregoing and with *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir.1983) by August 4, 2000. Defendant's opposition to the petition will be filed by August 18, 2000 and will indicate if any evidentiary hearing is required. Any reply by plaintiff will be filed by August 28, 2000.

## V. CONCLUSION

Defendant's motions to reconsider the Court's previous rulings on his post-trial motions (Doc. # 70 and Doc. # 71) are GRANTED. Upon reconsideration, for

the reasons stated above, defendant's motions for a new trial (Docs. # 63 and 65) and for judgment as a matter of law (Doc. # 64) are DENIED. The parties will file their memoranda regarding the amount of attorney's fees to be awarded according to the schedule set out above.

IT IS SO ORDERED.