**Curtis PACKER and Loraine Denaro, Plaintiffs,**

v.

**SN SERVICING CORP., SN Commercial, LLC, Ingomar Ltd. Partnership, and Wells Fargo Foothill, Inc., Defendants.**

No. 3:04cv1506 (MRK).

United States District Court, D. Connecticut.

May 16, 2008.

Joseph L. Rini, New Haven, CT, for Plaintiffs.

David P. Curtis, Joseph N. Mole, Frilot L.L.C., New Orleans, LA, Geoffrey K. Milne, Kimball Haines Hunt, Nicole L. Barber, Hunt Leibert Jacobson, P.C., Hartford, CT, for Defendants.

***RULING AND ORDER***

MARK R. KRAVITZ, District Judge.

Pending before the Court are Plaintiffs' Motions to Amend and for Reconsideration [docs. ## 226, 227] ("Motions to Amend and for Reconsideration") of the Court's Memorandum of Decision [docs. ## 219, 220] (the "Ruling") granting in part and denying in part Defendants' Motions for Summary Judgment.

The facts of this case are recited in the Court's Ruling and will not be repeated at length here. Plaintiffs, Curtis Packer and Loraine Denaro, filed a ten-count Amended Complaint ("Complaint") against SN Servicing Corp., SN Commercial LLC, and Ingomar Ltd. Partnership (collectively, the "SN Defendants") and Wells Fargo Foothill, Inc. ("Wells Fargo"). Counts One, Two, Three and Four of the Complaint relate to an Elm Street property, while Counts Five, Six, Seven and Eight concern a Blatchley Avenue property; Count Nine alleges intentional and negligent infliction of emotional distress, and Count Ten claims loss of consortium by Ms. Denaro. All Defendants moved for summary judgment. Following oral argument on December 20, 2007, the Court issued its Ruling on February 8, 2008. As to Wells Fargo, the Court granted summary judgment on all counts because it concluded that Plaintiffs had failed to provide any evidence that would enable a reasonable jury to hold Wells Fargo vicariously liable for the actions of the SN Defendants. As to the SN Defendants, the Court granted in part and denied in part their motion for summary judgment. As is relevant to the current motion, the Court denied summary judgment on Count Four, but only to the extent that count alleged violations of Connecticut's Unfair Trade Practices Act ("CUTPA") premised on incorrectly computed interest payments regarding the Elm Street property, and on Count Nine, but only to the extent that count alleged negligent infliction of emotional distress as to Mr. Packer.[1]

---

1. The Court granted summary judgment on the balance of the claims in Plaintiffs' Complaint. In summary, the Court granted judgment on Counts Five, Six, Seven and Eight because it found that Plaintiffs were collaterally estopped from raising those claims by a foreclosure decision on the Blatchley Avenue property. The Court further granted judgment on Counts One, Two, and Three—alleging violations of Connecticut General Statutes §§ 49-10, 49-10a, and § 47-10—because none of those statutes provides for an express or implied private cause of action. On Count Ten, a loss of consortium claim asserted by Ms. Denaro, the Court granted judgment con-

■ It is the Court's rulings on Count Four and Wells Fargo that Plaintiffs ask the Court to amend and reconsider under Rules 59(e) and 60(b) of the *Federal Rules of Civil Procedure.* "Although Rule 59(e) does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment, ... district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.,* 381 F.3d 99, 105 (2d Cir.2004) (quotation marks omitted). As this Court explained in *Nationwide Airlines (PTY) Ltd. v. African Global, Ltd.*:

> The standard for granting a motion for reconsideration [under Rule 59(e)] is strict. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* A "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Horsehead Res. Dev. Co., Inc. v. B. U.S. Envtl. Servs., Inc.,* 928 F.Supp. 287, 289 (S.D.N.Y. 1996) (internal citations and quotation marks omitted). Furthermore, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader,* 70 F.3d at 257. "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 790 (1981)).

*See* No. 04cv768 (MRK), 2007 WL 1201765, at *2 (D.Conn. Apr. 23, 2007).

For the reasons discussed, the Court grants Plaintiffs' timely motions to amend and to reconsider the Court's Ruling under Rule 59(e) to the extent those motions ask the Court to reconsider its Ruling.[2] Having fully reconsidered its Ruling, the Court adheres to its decision regarding Wells Fargo, but amends the Court's decision regarding Count Four.

## I.

In its Ruling, the Court stated as follows regarding the claims involving Wells Fargo:

> The parties agree that Wells Fargo held Mr. Packer's loans from April 2001 through August 2002 as collateral in connection with an Amended and Restated Loan and Security Agreement between SN Commercial and Wells Fargo. *See* Foreclosure J. at *1, *7; Pls.' Mem. in Opp. to Wells Fargo's Mot. for Summ. J. [doc. # 185], at 2–3; Wells Fargo's Mem. in Supp. of Mot. for Summ. J. [doc. # 171], Ex. 3 ("Collateral Assignment of Mortgage Deed & Assignment of Leases"). Wells Fargo has provided a sworn declaration attesting that its "interest in the Packer Mortgage Loans was solely as a creditor of SN Commercial," and that although the Amended and Restated Loan and Security Agreement allowed Wells Fargo to collect the monies owed on SN Commercial's behalf, Wells Fargo never did so and did not participate in any of the decisions regarding Mr. Packer's debts. *See* Wells Fargo's Mem. in Supp. of Mot. for Summ. J. [doc. # 171], Ex. 1 ("Declaration of John Noita") ¶ 6; *see also id.* Ex. 2 ("Amended and Restated Loan and Security Agreement"). The documentary record supports Wells Fargo's assertions. Plaintiffs have engaged in extensive discovery, but they have submitted no evidence to counter

cluding she could not assert that claim because Plaintiffs' common-law marriage fell outside the scope of that cause of action as defined by Connecticut courts. The Court granted summary judgment on Count Four to the extent that count sought recovery for lost sale opportunities or emotional distress and related losses. Defendants also received judgment on Count Nine, but only to the extent Plaintiffs sought recovery on a

claim of intentional infliction of emotional distress.

**2.** Because the Court has decided to reconsider its decision under Rule 59(e), the Court denies as moot Plaintiffs' motions to the extent they are brought under Rule 60(b).

Wells Fargo's statements regarding its creditor-borrower relationship with SN Commercial or its lack of involvement in the decisions regarding Mr. Packer's debts. Nor have Plaintiffs submitted to the Court any evidence at all that Wells Fargo asked, directed or wanted the SN Defendants to act for Wells Fargo in dealing with Plaintiffs or that the SN Defendants accepted the obligation to do so.

As a consequence, Plaintiffs have not met their burden of coming forth with evidence from which a reasonable jury could conclude that there was an agency relationship between Wells Fargo and the SN Defendants.

Ruling at 29–30.

Plaintiffs object to the Court's Ruling, arguing that: (1) further discovery as permitted by the Special Master's September 7, 2007 Ruling [doc. # 189], affirmed by this Court [doc. # 203], and May 12, 2008 Ruling [doc. # 247] (and which Plaintiffs claim Defendants have not fully complied with) might reveal an agency relationship between the SN Defendants and Wells Fargo, though with Wells Fargo as agent and the SN Defendants as principal; (2) there are various material facts in dispute regarding the relationship between Wells Fargo and the SN Defendants; and (3) even if the Amended and Restated Loan and Security Agreement between SN Commercial and Wells Fargo, which was submitted by Wells Fargo in support of its motion for summary judgment is controlling, the document demonstrates that an agency relationship existed between Wells Fargo and the SN Defendants.

Plaintiffs' complaints have no merit. First, the Court rejects Plaintiffs' argument that further discovery might reveal information that would establish an agency relationship between Wells Fargo and the SN Defen-

dants, whether as principal-agent or as agent-principal. Unlike most cases before this Court, the parties have engaged in protracted (and the Court might add, unnecessarily contentious) discovery. The Court has already granted more leeway to the parties in their various discovery-related disputes than is common or appropriate, having extended the discovery deadline at least ten times [docs. ## 34, 42, 50, 59, 77, 88, 94, 109, 143, 173]. Further, in their opposition to Wells Fargo's motion for summary judgment [doc. # 185], Plaintiffs never argued that the Court could not decide the motion because of the pendency of outstanding discovery. Indeed, on December 3, 2007, before argument on the motions for summary judgment, the Court held a hearing regarding discovery-related issues [doc. # 215], during which it sought to ensure whether the Court could and should decide the summary judgment motions despite the parties' ongoing discovery battles. Neither in that hearing nor at oral argument did counsel for Plaintiffs ever object to the Court addressing Wells Fargo's motion on the ground of ongoing discovery.[3] As Plaintiffs' counsel should appreciate—even if his clients do not—it is far too late in the day for him to do so now. The final pretrial conference in this case will take place in approximately a week, on May 22, 2008, and the trial is scheduled to begin soon after, on June 23, 2008.

Second, Plaintiffs take issue with the Court's statement in its Ruling that "the parties agree that Wells Fargo held Mr. Packer's loans from April 2001 through August 2002 as collateral in connection with an Amended and Restated Loan Security Agreement between SN Commercial and Wells Fargo." Ruling at 29. That statement -despite Plaintiffs' current efforts to dispute it[4]—does not bear on the Court's

3. Indeed, the Court would have been willing to withhold ruling on that issue if that objection had been raised. In its Ruling, the Court specifically refrained from addressing Defendants' request for summary judgment on Mr. Packer's claim of intentional infliction of emotional distress on the "intent" prong, because it noted that the SN Defendants had agreed that element might be affected by further discovery. Ruling at 22 n. 18.

4. Given Plaintiffs' insistence, the Court pauses to detail the support for the statement at issue. In their Memorandum in Opposition to Defendant Wells Fargo's Motion for Summary Judgment [doc. # 185], Plaintiffs assert as "Additional Facts" that Wells Fargo received possession of the Elm Street note on or about April 30, 2001 and transferred such assignment to Ingomar in August of 2002. See Pls.' Mem. in Opp'n to Wells Fargo's Mot. for Summ. J. [doc. # 185] at 2–3. Providing subsequent "Additional Facts,"

conclusion that there was insufficient evidence to raise a genuine issue of material fact regarding whether Wells Fargo was in an agency relationship with the SN Defendants. As explained in the Ruling and here, the Court's decision to grant summary judgment to Wells Fargo on all counts turned on the Court's conclusion that Wells Fargo provided documentary and testimonial evidence that it had a creditor relationship with SN Commercial. The simple fact is that Plaintiffs never submitted any evidence from which a reasonable jury could conclude that Wells Fargo's assertions were untrue.

Third, in support of their claim that the Amended and Restated Loan and Security Agreement would, notwithstanding the John Noita declaration, on its own provide proof of an agency relationship, Plaintiffs point to paragraph 2.10(e), contending that it reveals an agreement that SN Commercial pay Wells Fargo a "servicing fee" of $5,000.00 per month. Wells Fargo's Mem. in Supp. of Mot. for Summ. J. [doc. # 171], Ex. 2 ("Amended and Restated Loan and Security Agreement") at 21. This provision, Plaintiffs now argue, demonstrates an agency relationship, albeit one in which Wells Fargo was the agent and SN Commercial was the principal.

■ This argument comes too late and is inappropriate for a motion for reconsideration. The Court cannot identify any discussion of this issue in Plaintiffs' Memorandum in Opposition to Wells Fargo's Motion for

Summary Judgment [doc. # 185]. "It is well settled that a failure to brief an issue is grounds to deem the claim abandoned." *Lami v. Stahl*, No. 3:05cv1416 (MRK), 2007 WL 3124834, at *1 (D.Conn. Oct. 25, 2007); *accord Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). Plaintiffs—who filed four motions to extend the time by which they were to file a response to Defendants' motions [docs. ## 176, 180,182, 183], all of which were granted [docs. ## 177, 181, 186, 187]—had ample time in which to put together a brief incorporating all of their claims. Further, Plaintiffs had additional opportunity after oral argument to file supplemental briefs to bring this issue and argument to the Court's attention. Indeed, Plaintiffs filed a supplemental brief [doc. # 218] in response to questions raised at oral argument, but still did not raise this issue.[5] Thus, had this argument had any merit, Plaintiffs could have advanced it in connection with the summary judgment motion. Instead, they waited until they saw the Court's Ruling. Motions for reconsideration are not designed to allow parties to make arguments that they could have and should have made before the court ruled. As noted, the trial in this case is but a few weeks away. "It is simply far too late in the day to change course on this much delayed case." *Leonard v. Chrostowski*, No.

Plaintiffs then state that the Security Agreement provided that "SN Commercial L.L.C. could not foreclose upon, repossess the *collateral securing* or take other action with respect to any Portfolio Note.…" *Id.* at 4 (emphasis added). Furthermore, at argument, Plaintiffs agreed that collateral estoppel applied to all findings of fact made by the Superior Court Judge in the foreclosure proceeding. One such finding was that the assignment from SN Commercial to Wells Fargo (then called Foothill Capital) was validly executed despite Mr. Packer's arguments that the assignment to Wells Fargo extinguished all of SN Commercial's rights to the note and mortgage and that the parties "intended to convey all rights and interest in the note and mortgage to [Wells Fargo]," and his argument that there was insufficient testimony "to establish that the assignment was intended only to be a security, rather than a transfer of all rights in the note and mortgage." Foreclosure Decision, at * 1, *6–*7. The Security Agreement covers both the Blatchley Avenue and Elm Street properties. *See* Wells

Fargo Mem. in Supp. of Mot. for Summ. J. [doc. # 171], Ex. 2 ("Amended and Restated Loan Security Agreement"); Ex. 3 ("Connecticut Assignment of Mortgage Deed and Collateral Assignment of Leases"); *see also* Pls.' Mem. in Opp'n to Wells Fargo's Mot. for Summ. J. [doc. # 185] at 3 (describing as "Additional Facts" the statement that "[t]he Amended and Restated Loan and Security Agreement covers the Packer loans …."); *id.* at 2–3 (citing to same page and subparagraphs of the Amended and Restated Loan Security Agreement as support for the notion that Wells Fargo received possession of the Elm Street *and* Blatchley Avenue properties on or about April 30, 2001).

5. The Court notes that Plaintiffs (and indeed Defendants) have filed innumerable briefs and motions on other matters. *See, e.g.,* [docs. ## 60, 65, 71, 80, 81, 126, 129, 130, 138, 146, 152, 162, 193, 218].

3:04CV1381 (MRK), at 7 (D.Conn. Feb. 8, 2008); *Cf. Peck v. Pub. Serv. Mut. Ins. Co.*, 229 F.R.D. 48, 50 (D.Conn.2005) (denying leave to amend) ("The evolution of the legal and factual record in this case, however, cannot justify defendant's delay to the eve of trial to move for amendment of its answer, long after the close of discovery, particularly when the absence of such pleading was identified during the May 3 pre-trial conference."). Thus, the Court will not allow Plaintiffs to make new arguments regarding the existence of an agency relationship between Wells Fargo and the SN Defendants that Plaintiffs were able to make, but chose not to make, before this Court's Ruling.

Accordingly, upon reconsideration, the Court adheres to its Ruling granting judgment to Wells Fargo on all of the Plaintiffs' claims.

## II.

As to Count Four, the CUTPA claim, Plaintiffs take issue with this Court's rulings regarding what "ascertainable losses" Plaintiffs will be able to present at trial. In its Ruling, the Court stated,

> As determined during oral argument, Plaintiffs assert three types of losses under CUTPA: (1) Mr. Packer's lost sale opportunities on the Elm Street property as a result of Defendants' alleged delinquency in providing timely and proper payoff statements; (2) Mr. Packer's emotional distress and ensuing alleged financial losses resulting from the debilitative effect his emotional distress had on his ability to retain and manage the Elm Street property; and (3) Plaintiffs' payment of approximately $2,200 in interest that was otherwise not due under Connecticut General Statute § 49–10a in light of Defendants' failure to provide the Elm Street payoff letters in a timely manner.

Ruling at 18. As is relevant to the present motion, the Court then concluded as follows:

> Plaintiffs' claimed lost sales opportunities could qualify as ascertainable losses within the meaning of CUTPA, but it became clear at oral argument that Plaintiffs cannot provide any proof of such losses. Indeed, Plaintiffs' counsel conceded that

Plaintiffs have no admissible evidence of any firm offers for the Elm Street property, and that, to the extent any "informal" offers were made, they were for amounts less than that for which the Elm Street property was ultimately sold. Therefore, Mr. Packer has no ascertainable losses attributable to any claimed lost sales opportunities.

Ruling at 18–19. The Court also stated that Plaintiffs' "alleged 'lost sale opportunities' ... apply to Mr. Packer alone since Ms. Denaro did not have an ownership interest in the Elm Street property." *Id.* at 18 n. 16.

During oral argument, in an effort to bring some order into a case that had become unwieldy, the Court explicitly asked counsel for the parties to clarify what ascertainable losses were being sought in this case. As the transcript for the argument shows, Plaintiffs' counsel conceded that his clients' alleged ascertainable losses were limited to the three categories mentioned in the quotations noted above. Mr. Packer was present, sat at counsel table and conferred frequently with his counsel during the argument. In addition, the transcript shows that the Court repeatedly asked Plaintiffs' counsel to point to proof in the record of any offers to purchase the Elm Street property; Plaintiffs were unable to cite to any such proof and never sought to supplement the record in the weeks between oral argument and the Court's Ruling.

Now, following this Court's Ruling, Plaintiffs make two assertions in an effort to beat a hasty retreat from what the Court believed was resolved at oral argument. First, Plaintiffs argue that they do indeed have proof of offers to purchase the Elm Street property. They also insist that at oral argument, Defendants' counsel conceded that such documentation existed and thus, "Plaintiffs need not provide the Court with further evidence." Pls.' Reply [doc. # 234] at 4. Taking the second argument first, the Court has reviewed the transcript of oral argument, and Defendants' counsel made no such admission. In fact, Defendants complained that Mr. Packer had no non-hearsay evidence of such offers, and that all the materials submitted during the deposition were either not signed

or were from individuals who were not going to be witnesses in the case.

Turning to the claimed existence of proof of offers on the Elm Street property, remarkably, Plaintiffs failed to attach the alleged documentation to their motions to amend and for reconsideration and instead merely directed the Court to pages 262 through 281 of Mr. Packer's deposition. But the Court's review of Mr. Packer's deposition reaffirms that though Mr. Packer references documentation of such offers, no such documentation was ever provided to the Court in connection with the summary judgment motions. Worse yet, Plaintiffs omitted the cited pages from the excerpts of Mr. Packer's deposition that they submitted to the Court in opposition to the motions for summary judgment, though at the Court's insistence, the parties eventually submitted Mr. Packer's entire deposition transcript. *See* Pls.' Mem. in Opp'n [doc. #184], Exs. 9a–9c (omitting pages 247 through 283 of Mr. Packer's deposition). As a consequence of Plaintiffs' continued failure to submit the documentation of offers they claimed existed, the Court was required to call Plaintiffs' counsel in connection with its consideration of the motion for reconsideration to request copies of exhibits 36, 37, 38, 40, 41, 43, and 44 to Mr. Packer's deposition. On May 13, 2008, Plaintiffs provided the Court with the exhibits, which it turns out, do indeed include the long-elusive purchase agreement claimed by Plaintiffs [doc. #248], and which as the Court noted in its Ruling, would have enabled Plaintiffs to seek recovery of ascertainable losses regarding "lost sale opportunities." Ruling at 18–19.

A review of the submitted exhibits reveals that Mr. Packer entered into at least one purchase and sale agreement regarding the Elm Street property prior to the February 15, 2005 sale of that property to Connecticut Homes for $169,950.[6] Exhibit 43 is a purchase and sale agreement between a Mr. Richard Ware and Mr. Packer for $179,000 (providing for a seller-to-buyer credit of $14,000), indicating a closing date of May 28, 2004 and apparently signed by both Mr. Ware and Mr. Packer on April 30, 2004.[7] Also, exhibit 44 is an April 30, 2004 letter from Mr. Packer's attorney to Mr. Ware which references a "sales contract" and seeks to conclude the transaction. Thus, Mr. Packer has finally submitted documentation from which a jury might reasonably conclude that he suffered an ascertainable loss of a sale opportunity relating to the Elm Street property and arising from Defendants' alleged CUTPA violations. *See Lorenzetti v. Jolles,* 120 F.Supp.2d 181, 186–87 (D.Conn.2000) (finding that a reasonable jury could conclude that plaintiff established an ascertainable loss where, despite imprecision in purchase price, there was evidence to indicate that plaintiff would have purchased the property at issue had the Bank fulfilled its promises to him); *see also A. Secondino & Son, Inc. v. LoRicco,* 215 Conn. 336, 344, 576 A.2d 464 (1990) ("While CUTPA damages need not be proven with absolute precision, the failure to present *any* evidence concerning the nature and extent of the injury sustained precludes recovery under the statute." (emphasis added)). Accordingly, the Court will revise its Ruling to permit Mr. Packer to seek ascertainable loss arising from any documented lost opportunity regarding the Elm Street property.

■ Not done yet, Plaintiffs also now appear to claim that they incurred other ascer-

---

6. The Court observes that Mr. Packer apparently completed this transaction even though he still purportedly had not received the payoff statements.

7. There are other offers from Mr. Ware, but those offers are not signed by Mr. Packer. Exhibit 37 is an offer for $160,000 signed by Mr. Ware and with a closing date of April 9, 2004. Exhibit 38 is another offer from Mr. Ware, for $175,000, and with a closing date of March 29, 2004 and signed January 30, 2004. Exhibit 40 is another offer from Mr. Ware, for $200,000, and with a closing date of December 31, 2004 or sooner, and signed by Mr. Ware on November 18, 2004. Exhibit 36 is a purchase and sale agreement between Mr. Packer and Connecticut Homes, for $165,000, signed by both Mr. Packer and the Connecticut Homes representative on November 19, 2004. Exhibit 40 is an offer from a Bayna Walters, for $200,000, and with a closing date of December 31, 2004 and signed by Ms. Walters on November 18, 2004. Exhibit 41 is an offer for the Blatchley Avenue property, for which Plaintiffs do not claim a lost sale opportunity. *See* Motions to Amend and for Reconsideration at 6.

tainable losses beyond the three categories of losses recited by their counsel at oral argument. They now assert "additional expenses" incurred in connection with Defendants' alleged wrongful withholding of payoff statements and erroneous calculations of interest. As with Plaintiffs' arguments regarding Wells Fargo, the Court declines to consider these claims. Even if Plaintiffs' Complaint could be construed as raising these additional losses, Plaintiffs failed to brief or argue these claims in connection with the summary judgment motion and thus have abandoned any such claims. *See Lami*, 2007 WL 3124834, at *1; *accord Norton*, 145 F.3d at 117; *Frink Am., Inc. v. Champion Road Mach. Ltd.*, 48 F.Supp.2d 198, 209 (N.D.N.Y.1999) ("Plaintiff does not address these claims in its opposition papers, leading the court to conclude that it has abandoned them."); *Singleton v. City of Newburgh*, 1 F.Supp.2d 306, 312 (S.D.N.Y.1998) (claim made in complaint but "not raised elsewhere in the record" deemed "abandoned"). As noted, Plaintiffs had ample time in which to file a comprehensive brief and had further opportunity after oral argument to file supplemental briefing on this category of losses. Moreover, at argument, the Court expressly asked Plaintiffs' counsel to list the items of ascertainable loss that his clients were seeking so that the Court could focus on what was being claimed. Counsel never mentioned these new claims. In light of the discussion at oral argument, the Court will not excuse Plaintiffs' failure to raise these claims when expressly asked about their claimed losses.

■ Finally, Plaintiffs also assert that they can claim ascertainable losses stemming from Defendants' alleged failure to provide a timely payoff statement for the Blatchley Avenue property. *See* Motions to Amend and for Reconsideration at 6. The Court declines to consider this claim because during oral argument, counsel for Plaintiffs conceded that Defendants provided timely payoff statements for the Blatchley Avenue

property. *See* Ruling at 9, n. 11. Moreover, Plaintiffs' counsel also conceded that collateral estoppel applied to all claims relating to the Blatchley Avenue property. They were, in his words at argument "gone." Plaintiffs cannot seek to deny those concessions at this late hour. *United States Trust Co. of New York v. Shapiro*, 835 F.2d 1007, 1008 (2d Cir.1987) (per curiam) (noting previous refusal to consider issue conceded by counsel during oral argument to district court); *cf. Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994).

In addition to requesting reconsideration of the Court's conclusions as to Court Four and Wells Fargo, Plaintiffs also request that the Court amend alleged "misstatements of fact" in its Ruling. This decision resolves the amendments relating to "ascertainable loss." The Court declines to make any of the other requested amendments, as the Court concludes that they are either unsupported by the record or irrelevant to the outcome of the case.[8]

### III.

For the reasons stated, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motions to Amend [doc. # 226] and for Reconsideration [doc. # 227]. The Court has reconsidered its Ruling regarding Wells Fargo and adheres to it. As to the Court's Ruling regarding Count Four, the CUTPA claim, the Court clarifies that at the upcoming trial, in addition to the "loss of money resulting from the allegedly erroneous calculations of interest due under § 40–10a," Ruling at 20, Plaintiffs may seek recovery under Count Four for the ascertainable losses arising from documented lost sales opportunities regarding the Elm Street property. In all other respects, Plaintiffs' motion is denied.

IT IS SO ORDERED.

---

8. Plaintiffs seek two amendments, which the Court assumes to be in error. They request that the Court amend its Ruling to reflect that "The SN Defendants have been *justly* enriched by the retention of monies they demanded to be paid." Motions to Amend and for Reconsideration at 11 (emphasis added). In rejecting Plaintiffs' requests for amendments, the Court assumes that Plaintiffs intended to ask the Court to amend its Ruling to reflect that the SN Defendants have been *"un* justly enriched."